**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Lloyd Calvin ROBBINS,**
**Defendant-Appellant.**

No. 79–5203.

United States Court of Appeals,
Fifth Circuit.

Aug. 8, 1980.

Bruce S. Rogow, Miami, Fla., for defendant.

W. A. Kimbrough, Jr., U. S. Atty., Mobile, Ala., for plaintiff-appellee.

Before GODBOLD, SIMPSON and THOMAS A. CLARK, Circuit Judges.

GODBOLD, Circuit Judge:

Appellant Robbins was convicted of conspiracy to import marijuana and attempted possession of marijuana with intent to distribute, and sentenced to five years imprisonment on each count, plus a special parole term of three years. The sentences were to be served concurrently.[1] Robbins contends that the district court erred by (1) failure to exclude evidence obtained by a warrantless boarding and search by the Coast Guard of appellant's vessel without any suspicion of criminal activity, (2) failure to grant appellant's motion for acquittal at the end of the government's case-in-chief, (3) erroneously instructing the jury that the second count of the indictment charged conspiracy rather than attempt, and (4) focusing exclusively on what the court considered to be fabrication of testimony by appellant in sentencing him to five years imprisonment.[2]

### I. The Facts

Appellant's vessel, the 35-foot sloop *Summerwind*, was first sighted by the Coast Guard cutter *Dependable* in the Gulf of Mexico, approximately 350 miles south of Mobile, Alabama, 250 miles from the Florida coast, 210 miles from the Mexican coast, and 180 miles from Cuba. The *Summerwind* caught the Coast Guard's attention because she was running without lights at 2:00 a. m. The *Dependable* followed the *Summerwind* until daybreak, when the *Dependable* crew stopped and boarded the *Summerwind* for a routine inspection under the authority of 14 U.S.C. § 89(a). While an ensign was looking in the engine room for the sloop's main beam number in order to check it against the number given in the *Summerwind's* license, he detected an odor of marijuana. The resultant search revealed boxes containing 696 pounds of a substance later proven to be marijuana. Appellant was given a *Miranda* warning and arrested.

---

1. A co-defendant (and co-conspirator) was also convicted of the same offenses and initially sentenced to six months imprisonment, 30 months suspended sentence, and five years special parole term. His sentence was subsequently reduced to probation, and he does not appeal.

2. Appellant also contends that the district court abused its discretion in allowing some rebuttal testimony. This contention is wholly without merit and warrants no discussion.

Appellant was indicted on two counts: conspiracy to import marijuana, in violation of 21 U.S.C. § 963, and attempted possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 846. At trial appellant's two primary defenses were that he intended to deliver the boxes not to the United States but to a Mexican vessel off the coast of Cuba and that he did not know that the boxes contained marijuana. The jury apparently did not believe his testimony, as he was convicted on both counts. The district judge, in sentencing appellant to five years imprisonment, referred to his belief that appellant had lied on the stand about his intended destination and about his ignorance of the contents of the boxes.

## II. The Boarding and Search of the *Summerwind*

■ This court has recently held en banc that 14 U.S.C. § 89(a) confers on the Coast Guard "plenary power to stop and board any American flag vessel anywhere on the high seas in the complete absence of suspicion of criminal activity", at least for the purpose of conducting an administrative inspection. *U. S. v. Williams*, 617 F.2d 1063, 1075 (5th Cir. 1980) (en banc). *See also U. S. v. Warren*, 578 F.2d 1058, 1064–65 (5th Cir. 1978) (en banc). "This authority is plenary when exercised beyond the twelve-mile limit", *Warren*, 578 F.2d at 1064, and does not offend the Fourth Amendment. *Williams* and *Warren*. Moreover, once lawfully aboard, the Coast Guard may conduct routine administrative inspections, including documentation and safety inspections; the absence of either a warrant or suspicion of criminal activity does not render such administrative inspections violative of the Fourth Amendment. *Williams* and *Warren*. If the administrative inspection gives rise to a suspicion of criminal activity, a full scale search may be conducted. *Warren*.

A search warrant is unnecessary. *Williams*. The only limit upon the Coast Guard's authority to search vessels lawfully boarded is that it may not search "private" areas for the purpose of finding evidence of criminal activity without reason to suspect the existence there of such evidence. *Williams*.

■ The decisions in *Williams* and *Warren* govern this case. The Coast Guard boarding took place outside the 12-mile limit and was for the purpose of conducting an administrative inspection. The inspection itself was confined to routine inspection of non-private areas until the odor of marijuana gave rise to reasonable suspicion, justifying the subsequent search. No Fourth Amendment violation occurred.

## III. Motion for Acquittal

■ The appellant moved for acquittal at the end of the government's case. When the district court denied the motion, appellant presented evidence on his own behalf. He did not renew his motion at the conclusion of his own case. Under established Fifth Circuit precedent, this combination of circumstances operates as a waiver of the motion for acquittal and forecloses any review of the sufficiency of the evidence except where a miscarriage of justice would result. See *U. S. v. White*, 611 F.2d 531, 536 (5th Cir. 1980) and cases cited therein. In light of all the evidence we find that no miscarriage of justice would result from operation of the waiver doctrine.[3]

## IV. Erroneous Instructions

■ Appellant challenges jury instructions relating to the second count of the indictment. However, we are affirming his conviction on the first count, and the second conviction carries only a concurrent sentence with no collateral consequences.[4] This is, therefore, a proper case for the application of the concurrent sentence doc-

3. Appellant also urges us to reconsider the validity of the doctrine. This panel is bound by the decisions of other panels of the court and is not at liberty to reconsider the doctrine even if it desired to do so.

4. Appellant's eligibility for parole is determined in part by the "severity rating" given his offense. This rating depends solely on the

amount of marijuana involved in the offense and not on the number of different offenses of which he is convicted. 28 C.F.R. § 2.20. Conviction under the second count of the indictment therefore does not affect his eligibility for parole. *See U. S. v. Rubin*, 591 F.2d 278 (5th Cir.), *cert. denied*, 444 U.S. 864, 100 S.Ct. 133, 62 L.Ed.2d 67 (1979).

trine and we need not review the challenged instructions. See *U. S. v. Alfrey*, 612 F.2d 180 (5th Cir. 1980); *U. S. v. Ortiz*, 610 F.2d 280 (5th Cir.), *cert. denied*, —— U.S. ——, 100 S.Ct. 1320, 63 L.Ed.2d 764 (1980); *U. S. v. Rubin*, 591 F.2d 278 (5th Cir.), *cert. denied*, 444 U.S. 864, 100 S.Ct. 133, 62 L.Ed.2d 67 (1979).

Appellant further contends that the erroneous instruction as to count two spilled over and tainted the jury's conviction on count one. The court correctly charged the jury on the elements of conspiracy and explicitly instructed that "each count is to be considered by you as a separate charge against each defendant named in the indictment." The jury presumably followed the court's instructions and considered each count separately. The charge to consider each count separately combined with correct instructions on conspiracy served to insulate the first count from any erroneous instructions on the second count. *Cf. U. S. v. Agueci*, 310 F.2d 817, 828 (2d Cir. 1962), *cert. denied*, 372 U.S. 959, 83 S.Ct. 1013, 10 L.Ed.2d 11 (1963) (proof in mass conspiracy trial should be "compartmentalized" by defendant and by count).

## V. Sentencing

■ Appellant contends that in deciding upon his sentence the trial judge improperly focused exclusively on his belief that appellant had fabricated his testimony and that this violates the strictures of *U. S. v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978).

*Grayson* recognizes the power of the court to exercise a wide discretion in the source and types of evidence that will assist it in determining the kind and extent of punishment. *Id.* at 49, 98 S.Ct. at 2615, 57 L.Ed.2d at 589. These include prior anti-social conduct and the hope that rehabilitation efforts will succeed. A defendant's readiness to lie under oath is probative of his prospects for rehabilitation. *Id.* at 52, 98 S.Ct. at 2617, 57 L.Ed.2d at 591. *Grayson* reaffirms "the authority of a sentencing judge to evaluate carefully a defendant's testimony on the stand, determine—with a consciousness of the frailty of human judgment—whether that testimony contained willful and material falsehoods, and, if so, assess in light of all the other knowledge gained about the defendant the meaning of that conduct with respect to his prospects for rehabilitation and restoration to a useful place in society." *Id.* at 55, 98 S.Ct. at 2618, 57 L.Ed.2d at 592. However, *Grayson* precludes the court from basing a sentence solely upon its assessment that the defendant has lied, to the exclusion of other factors that are relevant.

In *Grayson* the court approved of a trial judge's explicating his reasons for imposing the sentence given.

> We know this only because of the trial judge's laudable explication of his reasons for imposing the sentence in this case. In many cases it would be impossible to discern whether a sentencing judge had been influenced by his belief that the defendant had not testified truthfully, since there is no requirement that reasons be given. But that fact does not argue against correcting an erroneous sentencing policy that is apparent on the face of the record. *Cf. Bordenkircher v. Hayes*, 434 U.S. 357, 372, 98 S.Ct. 663, 672, 54 L.Ed.2d 604 (Powell, J., dissenting). As the Court notes, ante, at 54, 98 S.Ct. at 2618, 57 L.Ed.2d at 592, "[t]he integrity of the judges" is a sufficient guarantee that they will not consciously consider factors that have been declared impermissible, even if the reasons for imposing a particular sentence are not stated on the record.

*Id.* at 55 n.1, 98 S.Ct. at 2618 n.1, 57 L.Ed.2d at 593 n.1. In this case, at sentencing the judge followed this "laudable" position. He remarked that what "[stuck] in [his] mind in response" to the mitigating circumstances surrounding appellant's offense was his belief that appellant's testimony was implausible, even incredulous. Appellant's sentence was substantially heavier than that imposed on his co-defendant. The trial judge's statement implies that the only reason for imposing the sentence assessed was his belief that the defendant had perjured himself on the witness stand. We have, therefore, examined *in camera* the report and recommendation of the probation officer to see if either reveals other reasons for

the sentence. Neither does. To the contrary, the probation officer's report reveals nothing to appellant's detriment and is in fact generally laudatory, concluding that appellant's desperate emotional and financial circumstances drove an otherwise law-abiding citizen to an irrational course of action. The sentencing recommendation is for a term substantially less than that actually imposed and with execution of the sentence suspended.

In these circumstances, *Grayson* requires that we vacate the sentence and remand for resentencing in light of all the factors appropriately bearing on the type and extent of sentence, including but not limited to the judge's assessment that defendant fabricated testimony.[5]

AFFIRMED IN PART, VACATED and REMANDED IN PART.

---

5. Appellant urges us to commit the resentencing authority to a different district judge. This we decline to do.