**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John DOE, a/k/a Bobby Charles Underwood, Defendant-Appellant.**

**No. 80–7131.**

United States Court of Appeals,
Fifth Circuit.*
Unit B

Dec. 28, 1981.

* Former Fifth Circuit Case, Section 9(1) of Public Law 96–452—October 14, 1980.

J. Stephen Salter, Birmingham, Ala., for defendant-appellant.

Frank M. Salter, Birmingham, Ala., for plaintiff-appellee.

Before SIMPSON, RONEY, and THOMAS A. CLARK, Circuit Judges.

SIMPSON, Circuit Judge:

The defendant, Bobby Charles Underwood, was found guilty after a jury trial of the illegal distribution of cocaine.[1]  He appeals his conviction asserting that: the evidence was insufficient to support a conviction; the trial court erred in failing to adequately instruct the jury on the issue of identification; and the trial court erred in prescribing the custodial sentence.  After a careful review of the trial court record, we find the evidence insufficient to support the jury's verdict and reverse.[2]

I

On August 30, 1979, DEA Agent James Reed arranged to meet Cecil McClure and another man to purchase one ounce of cocaine for twenty-one hundred dollars.  Later that same night, Reed drove to a Birmingham parking lot where Cecil McClure was waiting.  Then, as instructed by McClure, Agent Reed walked across the parking lot and was introduced by McClure to "Bobby", now said to be the appellant, Bobby Charles Underwood.  There in the parking lot the drug sale was consummated under a dark sky and misty rain.  Based upon this transaction, an indictment was returned charging Cecil McClure and John Doe, also known as "Bobby", with the distribution of cocaine.

This drug sale occurred in a parking lot near the Connors Steel Company.  As a result, without any other basis for inquiry,[3] Agent Reed asked the Connors Steel Company for a list of all employees named Robert or Bobby.  Reed was supplied with a list of less than ten names gathered from

---

1.  Bobby Charles Underwood was charged and convicted for the distribution of cocaine in violation of 21 U.S.C. 841(a)(1).

2.  We do not address the appellant's other arguments in view of our holding that the evidence was insufficient to sustain the conviction.

3.  Agent Reed testified that as the transaction occurred across the street from a steel plant, he suspected that the narcotic seller was an employee there.  (Record, vol. 2 at 54).

some eight hundred employees. Among those employees listed was the appellant, Bobby Charles Underwood.[4]

Soon thereafter, Agent Reed drove to a local paint and body shop and questioned its owner, Clemothy Bell, as to whether Bobby Charles Underwood was on the premises. Bell replied that Underwood was not there. Reed then left the building and waited in his car parked across the street from the body shop. A few minutes later, when a customer drove onto the premises, Bell testified afterwards that Agent Reed came over and asked Bell whether this individual was Underwood. Bell responded that it was not Underwood but a customer. Reed again left the body shop and waited across the street. A short time later, when Bobby Charles Underwood did arrive, Bell stated that Reed came over and asked Underwood, "Are you Bobby Underwood?".[5] When Underwood answered affirmatively, he was arrested.

At the trial below, both Agent Reed and Cecil McClure testified for the government. At the close of the government's evidence, the appellant's attorney moved for a judgment of acquittal.[6] The District Court denied the motion and appellant presented evidence in his own behalf. At the close of all the evidence, however, appellant failed to renew his motion for acquittal. Underwood was found guilty and sentenced to fifteen years' imprisonment and a special parole term of fifteen years.

## II

■ When a defendant fails to renew his motion for acquittal at the end of all the

evidence, the sufficiency of the evidence is not reviewable on appeal, absent a manifest miscarriage of justice. *United States v. Perez*, 651 F.2d 268 (5th Cir. 1981); *United States v. Merritt*, 639 F.2d 254 (5th Cir. 1981); *United States v. Robbins*, 623 F.2d 418 (5th Cir. 1980); *United States v. White*, 611 F.2d 531 (5th Cir. 1980), cert. denied, 446 U.S. 992, 100 S.Ct. 2978, 64 L.Ed.2d 849 (1980); *United States v. Smith*, 546 F.2d 1275 (5th Cir. 1977); *United States v. Phipps*, 543 F.2d 576 (5th Cir. 1976), cert. denied, 429 U.S. 1110, 97 S.Ct. 1146, 51 L.Ed.2d 564 (1976); *United States v. Casey*, 540 F.2d 811 (5th Cir. 1976).

We find the evidence pointing to guilt in this case to be so meager and so unsatisfactory that to affirm this conviction would result in a clear miscarriage of justice.

■ In reviewing the sufficiency of the evidence, we must view the evidence in a light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Rodriguez*, 654 F.2d 315 (5th Cir. 1981). We must accept all reasonable inferences and credibility choices, gathered from direct or circumstantial evidence, that tend to support the jury's verdict. *United States v. Salinas*, 654 F.2d 319 (5th Cir. 1981); *United States v. Cardona*, 650 F.2d 54 (5th Cir. 1981). Viewing the sufficiency of the evidence, we can reverse the conviction only if we conclude a reasonable jury could not find the evidence inconsistent with any reasonable hypothesis of the defendant's innocence. *United States v. Welch*, 656 F.2d

---

**4.** Bobby C. Underwood had been a Connors Steel employee for some fifteen years. (Record, vol. 2 at 80). At the trial below, Underwood's weekly time card was introduced into evidence and showed punch marks for 2:48 P.M., 10:30 P.M., and 11:00 P.M., for the night of the drug sale. (Record, vol. 2 at 77–78). There is, however, no testimony as to the time of the drug transaction.

**5.** On direct examination, Clemothy Bell said:

Q: Did they say this, or this in substance, Mr. Bell, "Are you Bobby Underwood", or "What is your name", or something of that nature?

A: When they met at the door, they asked him was he Bobby Underwood. He told them, yes, sir, he was.

Q: Okay. Who said that, "Are you Bobby Underwood?" Who made that statement?

A: Mr. Reed (pointing). (Record, Vol. 2 at 90–91).

**6.** Appellant characterized his motion as a motion to exclude the government's case and a motion for a directed verdict. (Record, vol. 2 at 84). However, Fed.R.Crim.P. 29(a) abolished motions for directed verdicts and substituted motions for judgments of acquittal in their place.

1039 (5th Cir. 1981); *United States v. Molina-Garcia*, 634 F.2d 217 (5th Cir. 1981).

### III

This criminal action began as a staged narcotic purchase, designed as a controlled event, under the eyes of six expert law enforcement officers. Yet, of these six, only one officer was able to give significant testimony to link the appellant with the crime.[7] Therefore, this conviction rests entirely upon the strength of Agent Reed's identification of the appellant as the Bobby who sold the cocaine.

Few uncontradicted facts were adduced at trial as evidence to support the appellant's guilt. First, Agent Reed's identification of Underwood was contradicted by McClure, another government witness. Agent Reed testified that he had never seen the appellant before the drug sale, saw him for less than five minutes during the sale, and had not seen Underwood again until his arrest some four months later. Yet, at trial, Agent Reed positively identified Bobby Charles Underwood as the Bobby who sold him the cocaine. In contrast, when asked if he recognized Underwood as the drug seller, Cecil McClure testified, "I don't recognize him. No, I don't see him".[8] At trial, Agent Reed stated that on the night of the sale, "[Bobby] was wearing blue jeans, faded denim work shirt, and his hair was curly, and he had a mustache".[9] McClure, however, stated that Bobby had a "hat and a jacket on or a shirt or a sweatshirt" and "beard and a mustache".[10] McClure also failed to identify Underwood from a group of photographs shown him by Agent Reed. Furthermore, Clemothy Bell's testimony as to Reed's inability to identify Underwood at his arrest was neither rebutted nor contradicted. Finally, Reed's identification of Underwood was not bolstered by other circumstantial or corroborating evidence. The vehicle in which the transaction occurred was not linked to the appellant. Neither fingerprints nor photographs of the sale were introduced into evidence at the trial linking Bobby Charles Underwood with the narcotic sale. These factors support our conclusion that the government failed to meet an essential element of proof of every crime: that the defendant was the person who committed it.

In *Salley v. United States*, 353 F.2d 897 (D.C.Cir.1965), the District of Columbia Circuit Court reversed a conviction which was based upon a single eye witness as to the narcotic seller's identity. Judge Skelly Wright, for the court, noted the problems inherent in a single eyewitness identification by an undercover police officer engaged in a narcotic sale:

Q: Okay. You cannot positively identify him?
A: I cannot positively identify him.
Q: Can you positively say that it is not him?
A: No, I can't positively say it is not him.
Q: So it might or might not be?
A: It's possible. (Record, vol. 2 at 68).

---

7. Five other law enforcement officers (Record, vol. 2 at 38) surveilled the cocaine sale, "to corroborate evidence and to make sure that nothing happened to [Agent Reed] or the informant". (Record, vol. 2 at 39). Only one other officer, Sergeant Clanton, testified at the trial below. Clanton described the drug sale, but did not identify or give testimony linking the defendant, Bobby Charles Underwood, with the crime.

8. McClure, a disabled fireman, was convicted for the distribution of cocaine and ultimately received two years probation. On direct examination, Cecil McClure said:
    Q: I will ask you to look around the courtroom and see if you see anyone today——. Do you see that Bobby that you participated in the drug sale with out there on the thirtieth of August 1979?
    A: I don't recognize him. No, I don't see him.
    Q: Okay. Well, do you see the defendant in this case?
    A: Yes, sir.

9. Record, vol. 2 at 50. The discrepancies between the two principal government witnesses is highlighted by testimony as to whether McClure used a cigarette lighter the night of the sale to see. Reed testified that it was so dark and misty that McClure twice used a cigarette lighter to illuminate the transaction: in adjusting the scales and verifying the weight of the cocaine. (Record, vol. 2 at 42). McClure testified that he did not use a lighter. (Record, vol. 2 at 68).

10. Record, vol. 2 at 67–68.

The widespread police practice of utilizing undercover agents and informers to infiltrate the narcotic underworld is effective and necessary. But it creates added danger that the innocent may be convicted. The undercover agent often files for as many as 100 warrants after his tour of duty, which generally lasts for a number of months. During that time he meets many people, making buys from some and not from others. The possibility of error due to mistake and the fallibility of human memory is obvious. Often the only chance a defendant has to defend himself without accusing the officer of total fabrication is to raise in the jury's mind a reasonable doubt as to whether the defendant was, in fact, the seller. Id., at 899.

The evidence of the identity of the appellant, Bobby Charles Underwood, as the narcotic seller, falls far short of any approved standard for affirmance.

The judgment below is reversed, and the trial court is directed to enter judgment of acquittal.

REVERSED and RENDERED.