**Ronnie Lee MAUPIN, Plaintiff-Appellant,**

v.

**Steve SMITH, Superintendent, Kentucky State Reformatory; and Steven L. Beshear, Attorney General of Kentucky, Defendants-Appellees.**

**No. 84–5446.**

United States Court of Appeals, Sixth Circuit.

Argued April 1, 1985.

Decided March 5, 1986.

Rehearing and Rehearing En Banc Denied May 21, 1986.

Joanne M. Yanish, Frankfort, Ky., Randall L. Wheeler, argued, for plaintiff-appellant.

David A. Armstrong, Atty. Gen., Frankfort, Ky., Gerald Henry, argued, for defendants-appellees.

Before MARTIN and KRUPANSKY, Circuit Judges; and HOLSCHUH, District Judges.*

BOYCE F. MARTIN, JR., Circuit Judge.

Ronnie Lee Maupin appeals the district court's denial of his habeas corpus petition. Maupin was tried and convicted in 1977 of the murder of William Drew and was sentenced to twenty years in prison. Maupin alleges that his conviction is invalid because it was based on insufficient evidence and because he was denied effective assistance of counsel.

### I.

On the evening of August 8, 1976, Maupin, Arthur Jones, and William Drew drove to an isolated wooded area where William Drew said he could get a gallon of moonshine. The three men left their car parked in the middle of a gravel road and walked into the woods where the moonshine was located. After Maupin, Jones, and Drew had walked back to the car, Maupin claims that someone began shooting at the three of them from across the road. Maupin was hit in the arm by a shot, and Jones was also injured. According to Maupin, he and Jones scrambled into the car, and Maupin tried to drive down the road but after a

---

* Honorable John D. Holschuh, United States District Judge for the Southern District of Ohio, sitting by designation.

short distance he drove into a ditch. Maupin claims he does not know what happened to Drew because of his haste to leave the scene.

Maupin and Jones then apparently walked to a nearby house where Greg Phillips was watching television. Phillips testified that Maupin and Jones were both bloody and that he and Jones helped Maupin into a car to take him to meet an ambulance. Maupin told Phillips during the trip to the hospital that a man named George Drew had shot at them. William Drew was to have been a witness at George Drew's trial for the murder of Phillips' father.

Maupin claims that the next day he, Jones, and Maupin's brother went back to the site of the shooting to dig their car out of the ditch. When they got there, they discovered the body of William Drew, and they phoned the state police from a nearby home. Detective Jim McWhorter of the Kentucky State Police immediately came to investigate the incident.

Detective McWhorter determined through his investigation that Maupin's version of the facts was entirely inconsistent with the physical evidence from the scene of the crime. There was no evidence that anyone had been in the bushes from where Maupin claimed the shots originated. Drew was shot at close range (18–36 inches) instead of from a considerable distance as Maupin claimed. McWhorter found no bullet or pellet holes in the car where Maupin claimed he and Jones were standing when shot. In fact, Detective McWhorter found evidence that the shots had come from the direction of the car, which was directly contrary to Maupin's version. Detective McWhorter also determined, after talking to members of George Drew's family, that Drew was at home on the night of the shooting.

Detective McWhorter further testified at trial that William Drew's body was found thrown in some bushes approximately thirty feet from where he had been shot. McWhorter based this conclusion on the fact that a trail of blood could be traced back to the place of the shooting. Drew had been shot in the arm and hit by a blunt object to the back of his head, and the cause of his death was loss of blood. A second trail of blood led to the body of the victim, the inference being that that trail belonged to Maupin. Several spent shotgun shells were found in the road near the scene of the shooting.

Although Maupin testified that neither he nor Jones had a gun at the time of the shooting, Maupin had been seen with a shotgun earlier in the day. Maupin also told Greg Phillips that he had lost a shotgun at the scene of the crime. Moreover, Jones had a shotgun with him when he and Maupin came to the Phillips' house after the shooting.

Based on this evidence, a jury found Maupin guilty of murder. In a separate trial, Jones was also found guilty of Drew's murder, but his conviction was reversed by the Kentucky Supreme Court for insufficient evidence. The Kentucky Supreme Court refused to consider Maupin's insufficient evidence claim on appeal because his trial counsel had failed to move for a directed verdict at the close of all the evidence as required by *Kimbrough v. Commonwealth,* 550 S.W.2d 525 (Ky.1977). Maupin then sought to have his judgment vacated on the ground that his counsel was ineffective for failing to move for a directed verdict, and the Kentucky courts also rejected this claim. Maupin thereupon filed this habeas petition in federal district court.

The district court, rejecting the magistrate's recommendation, held Maupin's failure to move for a directed verdict at the end of all evidence precluded review of his insufficient evidence claim under the "cause and prejudice" standard of *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977). Although the district court found adequate cause for Maupin's failure to seek a directed verdict, the district court concluded that Maupin was not actually prejudiced because the Kentucky Supreme Court could have waived the state procedural require-

ment and because there was no merit to Maupin's insufficient evidence claim. The district court did not discuss Maupin's ineffective assistance of counsel claim.

## II.

When a state argues that a habeas claim is precluded by the petitioner's failure to observe a state procedural rule, the federal court must go through a complicated analysis. *See generally* L. Yackle, *Post-Conviction Remedies* § 84 (Supp. 1985). First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. In this case, Maupin concedes that Kentucky has a judicially created rule that a defendant must move for a directed verdict at the end of all evidence to preserve an insufficient evidence claim. *Kimbrough v. Commonwealth*, 550 S.W.2d 525 (Ky.1977). The magistrate found as a matter of fact that Maupin's counsel failed to move for a directed verdict at the close of all evidence, and Maupin does not challenge that conclusion.

Second, the court must decide whether the state courts actually enforced the state procedural sanction. *See County Court of Ulster County, New York v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 2220, 60 L.Ed.2d 777 (1979); *Meeks v. Bergen*, 749 F.2d 322, 325 (6th Cir.1984); *Melchior v. Jago*, 723 F.2d 486, 490 (6th Cir.1983), *cert. denied*, 466 U.S. 952, 104 S.Ct. 2156, 80 L.Ed.2d 542 (1984). In this case, the Kentucky Supreme Court explicitly refused to

consider Maupin's insufficient evidence claim because of his procedural default.

Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. *See Allen*, 442 U.S. at 148, 99 S.Ct. at 2220; *Sykes*, 433 U.S. at 78, 81, 97 S.Ct. at 2502, 2503. *See also Blair v. Kentucky*, 449 U.S. 962, 101 S.Ct. 377, 66 L.Ed.2d 230 (Brennan, J., dissenting from denial of certiorari). This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. *See Henry v. Mississippi*, 379 U.S. 443, 446–48, 85 S.Ct. 564, 566–67, 13 L.Ed.2d 408 (1965). Here, Maupin at one point advanced the argument to the district court that the Kentucky procedural rule was not an adequate and independent state ground, but he later withdrew that argument. That argument has not been advanced in these proceedings.[1]

Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Reed v. Ross*, 468 U.S. 1, 104 S.Ct. 2901, 2908, 82 L.Ed.2d 1 (1984); *Engle v. Issac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982); *Sykes*, 433 U.S. at 87, 97 S.Ct. at 2506; *Payne v. Rees*, 738 F.2d 118, 124 (6th Cir.1984).[2]

---

1. Maupin's withdrawal of this argument may have been in light of *Blair v. Kentucky*, 592 S.W.2d 132 (Ky.), *cert. denied*, 449 U.S. 962, 101 S.Ct. 377, 66 L.Ed.2d 230 (1980), in which the United States Supreme Court refused to overturn an application of the procedural rule in question.

2. Since *Sykes* was handed down, a debate has raged in the lower federal courts over when to apply the *Sykes* "cause and prejudice" test and when to employ the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). *See* L. Yackel, *supra*, at § 83 (Supp.1985). This Court has expressed the

view that *Sykes* should apply when the decision to act is the type usually made by the defendant's counsel without consultation with the defendant while *Fay* applies when the decision is the type usually made by trial counsel only after consulting with the defendant. *Crick v. Smith*, 650 F.2d 860, 867 (6th Cir.1981), *cert. denied*, 455 U.S. 922, 102 S.Ct. 1281, 71 L.Ed.2d 464 (1982). *But see Payne v. Rees*, 738 F.2d at 124 (suggesting holding in *Crick* was dictum and applying *Sykes* test). Under the *Crick* standard, the procedural default in this case was the type that counsel would make without consultation with the defendant, thus the *Sykes* standard would apply. The district court applied the

The district court found that there was "cause" for Maupin's failure to move for a directed verdict because Maupin's counsel simply forgot to make such a motion. *See Carrier v. Hutto*, 724 F.2d 396, 401 (4th Cir.1983). The state does not challenge this conclusion on appeal, but argues instead that Maupin suffered no actual prejudice.

■ The prejudice prong of the *Sykes* formula has been an elusive concept for the lower federal courts, but several guidelines can be distilled from the Supreme Court's pronouncements and the case law interpreting those pronouncements. First, it is clear that the prejudice that must be shown must be a result of the alleged constitutional violation and not a result of the trial counsel's failure to meet state procedural guidelines. *See United States v. Frady*, 456 U.S. 152, 168, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982) (prejudice must result from the errors of which defendant complained). Thus, in this case, we must examine whether Maupin was prejudiced by his conviction based on allegedly insufficient evidence. We need not determine whether any prejudice resulted from the actual procedural default. For example, the fact that the Kentucky Supreme Court refused to consider Maupin's claim because of his procedural default is irrelevant in the prejudice analysis.[3] Maupin must therefore demonstrate prejudice based on his constitutional claim, irrespective of his procedural fault.

■ Second, the burden is on the petitioner to show that he was prejudiced by the alleged constitutional error. *Frady*, 456 U.S. at 170, 102 S.Ct. at 1595. Moreover, he must show that there was actual prejudice not merely a possibility of prejudice. *Id. See also Engle v. Isaac*, 456 U.S. at 129, 102 S.Ct. at 1572.

■ Third, in analyzing a petitioner's contention of prejudice, the court should assume that the petitioner has stated a

meritorious constitutional claim. One must remember that the question decided in *Sykes* was when a state procedural default would prevent a federal court from considering the merits of habeas claim. *Sykes*, 433 U.S. at 78–79, 97 S.Ct. at 2502. If a court reviews the merits of the petitioner's habeas claim in conjunction with the court's prejudice determination, as the district court did in this case, the court would have merged the *Sykes* issue with the issue of the merits. *See Ford v. Strickland*, 696 F.2d 804, 844, 858–59 (11th Cir.) (en banc) (Kravitch, J., concurring in part and dissenting in part), *cert. denied*, 464 U.S. 865, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983).

The last point is best illustrated by *United States v. Frady, supra*. In *Frady*, the petitioner argued that he was prejudiced by a jury instruction which erroneously instructed on the element of malice, leading to a conviction of first degree murder rather than manslaughter. In rejecting this contention, the Supreme Court did not examine whether Frady's claim was meritorious but turned to whether Frady would have been prejudiced by such an error. *Frady*, 456 U.S. at 170–72, 102 S.Ct. at 1595–96. Finding the evidence overwhelming on the issue of malice, the Court concluded that the jury instruction, if erroneous, could not possibly have resulted in prejudice. *See also Sykes*, 433 U.S. at 91, 97 S.Ct. at 2508 (weight of evidence negated any possibility that petitioner was actually prejudiced by admission of inculpatory statement).

■ Applying these guidelines to this case, we shall assume that there was insufficient evidence for a reasonable jury to find Maupin guilty, which is clearly a cognizable constitutional claim. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Given this assumption, there can be no doubt that Maupin would have been prejudiced by such a constitu-

---

*Sykes* standard, and Maupin does not appear to contest that decision.

3. In fact, if a petitioner could establish prejudice by simply showing that an appellate court refused to consider his claim, the "prejudice" prong of *Sykes* would be meaningless.

tional violation. It is self-evident that a conviction based on insufficient evidence would be actually prejudicial to the petitioner.

▮ Having determined that Maupin can properly raise his insufficient evidence allegation, we now turn to the merits of that claim. We conclude that a "rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 324, 99 S.Ct. at 2791. The evidence, as outlined above, could have convinced a rational jury that Maupin fabricated what occurred the night of the killing and that Maupin and Jones killed Drew in a drunken brawl. Although the evidence of Maupin's guilt was entirely circumstantial, we have clearly stated "that circumstantial evidence alone can sustain a guilty verdict and that to do so, circumstantial evidence need *not* remove every reasonable hypothesis except that of guilt." *United States v. Stone*, 748 F.2d 361, 362 (6th Cir.1984). We also agree with the district court's conclusion that the reversal of Jones' conviction by the Kentucky Supreme Court on the ground of insufficient evidence is not dispositive of this case as the evidence adduced at Jones' trial may have been quite different.

### III.

▮ Maupin also alleges that his counsel was ineffective because he failed to move for a directed verdict at the close of all evidence. The Supreme Court recently articulated in *Strickland v. Washington*, 446 U.S. 668, 104 S.Ct. 2052, 2059, 80 L.Ed.2d 674 (1984), the proper standard for evaluating ineffective assistance of counsel claims. In *Strickland*, the Court held that:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.

Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 104 S.Ct. at 2064. Given our conclusion that there was sufficient evidence to support Maupin's conviction, we conclude that counsel's alleged error did not result in such prejudice as to meet the second part of the *Strickland* standard.

Judgment affirmed.

HOLSCHUH, District Judge, dissenting. I respectfully dissent.

As a direct result of his attorney's failure to renew a motion for a directed verdict at the close of all the evidence and the Kentucky Supreme Court's application of its judicially created *Kimbrough* rule, petitioner, Ronnie Lee Maupin, was deprived of his opportunity to appeal his murder conviction on the ground of the insufficiency of the state's evidence. The attorney for petitioner's co-defendant, Jones, did not make that mistake, and Jones' murder conviction, based on the identical physical evidence that convicted petitioner, was reversed by the Kentucky Supreme Court because of the insufficiency of the state's evidence. Maupin is serving a twenty year sentence in a Kentucky state prison. Jones is free.

For the reasons that follow, I believe that the majority opinion is in error in its holding that Maupin suffered no prejudice as a result of his attorney's failure to comply with Kentucky's procedural rule. Upon a showing that an attorney's failure to comply with a state procedural rule constituted a denial of defendant's constitutional right to effective assistance of counsel, and I believe that such a showing was made in this case, a state court cannot enforce that procedural rule to preclude a defendant's constitutional right to due process. If the

attorney's failure to comply with the state's procedural rule does not rise to the level of ineffective assistance of counsel, then a federal court will defer to the state's procedural default rule and will deny habeas relief, absent a showing of cause and prejudice under *Sykes* sufficient to overcome the state's procedural bar. I also believe that petitioner has met the *Sykes* burden in this case and that the evidence was insufficient to support his murder conviction.

## I.

A threshold question in this case concerns the *Kimbrough* rule itself and whether it serves a legitimate state interest "more significant than mere judicial convenience," *Francis v. Henderson* 425 U.S. 536, 540, 96 S.Ct. 1708, 1710, 48 L.Ed.2d 149 (1976), thereby entitling it to deference by a federal court charged with the protection of constitutional rights in habeas cases arising from state court convictions.[1] Although, as the majority correctly points out, Maupin's argument in the district court that the *Kimbrough* rule does not rest on sufficiently significant state interests has not been advanced in this Court, I believe that it is still proper to consider, at the outset, whether under the facts of this case the rule has a legitimate application entitling it to enforcement in these proceedings.

As set forth in greater detail below, the state's evidence at Maupin's trial showed that Drew, Jones and Maupin were all engaged in a gun fight that took place at night on a lonely road leading to a moonshine still. Maupin himself was wounded in this fracas, and someone—most likely Jones from the physical evidence—shot and killed Drew. During the state's case in chief certain of Maupin's statements explaining his version of the night's events, *i.e.*, that the three men were shot by someone hiding in the woods, were introduced in evidence. At the close of the state's case, Maupin's attorney made a motion for a directed verdict based on the insufficiency of the state's evidence, which motion was denied. Maupin then testified in his own defense, essentially repeating what he had said in his earlier statements already in evidence. Nothing in Maupin's evidence added any substance to the evidence produced by the state. Yet the failure of Maupin's attorney to renew the motion for a directed verdict and the Kentucky Supreme Court's rigid application of the *Kimbrough* rule deprived Maupin of his appeal on the insufficiency of the evidence claim.

In *Carpenter v. Leibson*, 683 F.2d 169 (6th Cir.1982), this Court had occasion to consider the *Kimbrough* rule in another case in which a defendant's evidence did not add anything of substance to the state's evidence and the defense attorney had failed to renew the motion for a directed verdict at the close of all evidence. In that case, the Court concluded:

> Since it was not even contended that the evidence offered by the defendants after the denial of their motions for a directed verdict supported the Commonwealth's case, the state had no legitimate interest in requiring a renewal of the motion for a directed verdict.

*Carpenter v. Leibson*, 683 F.2d at 172.

While the argument could well be made that the same reasoning should apply to this case and that Kentucky's *Kimbrough* rule, as applied in this case, should not be a barrier to our consideration of Maupin's constitutional claim, I do not base my dissent on this ground. Instead, I shall assume, as does the majority, that the *Kimbrough* rule, like the contemporaneous objection rule considered in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), served a legitimate state interest in this case. It does not follow, however, that Kentucky is at liberty

---

1. I do not consider the Supreme Court's denial of certiorari in *Kentucky v. Blair*, 592 S.W.2d 132 (Ky.), *cert. denied*, 449 U.S. 962, 101 S.Ct. 377, 66 L.Ed.2d 230 (1980), as any indication of an expression by that Court that such a rule always serves purposes entitled to considerations of comity and federalism. *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).

to enforce a procedural default and deny an appeal if that default resulted from a defendant being denied his constitutional right to the effective assistance of counsel. (Part III, *infra.*)

## II.

The petition for a writ of habeas corpus in this case sets forth two grounds for relief:

Ground one: Evidence insufficient to support the conviction. The trial testimony does not directly link petitioner to the crime. The only link between petitioner and the crime is that petitioner was with the victim prior to the shooting and was present when the shooting began.

Ground two: Denial of effective assistance of counsel. Petitioner's trial counsel failed to make a motion for directed verdict at the close of all the evidence and thereby precluded petitioner's claim of insufficient evidence from being considered by the Supreme Court of Kentucky. This failure denied petitioner use of a crucial defense that would have resulted in his conviction being overturned.

(Vol. III, Appendix for Appellant, p. 322.)

In his report and recommendation regarding Maupin's habeas petition, the Magistrate expressly found that the failure of petitioner's trial counsel to renew the motion for a directed verdict at the close of all the evidence constituted ineffective assistance of counsel. Alternatively, the Magistrate found that even if trial counsel's failure to renew the motion did not rise to the level of ineffective assistance of counsel, his conduct constituted "cause" under *Sykes* for petitioner's failure to comply with Kentucky's procedural requirement. The Magistrate also found that the "prejudice" requirement under *Sykes* was shown by the denial of petitioner's "opportunity to raise his only viable defense on appeal." (Vol. III, Appendix for Appellant, pp. 470, 472.) The district court agreed that "cause" under *Sykes* "is established by inadvertence or the ineffective assistance of counsel," but disagreed with the Magistrate that petitioner had made a showing of "prejudice" as required by the second prong of *Sykes*. (Vol. III, Appendix for Appellant, p. 511). The majority opinion of this panel treats this case as one that basically involves the application of *Sykes* and, after finding that the cause and prejudice prongs of *Sykes* are both satisfied, considers but rejects the merits of petitioner's claim of insufficiency of the evidence. The majority also rejects petitioner's claim of ineffective assistance of counsel on the reasoning that petitioner had failed to make a showing of "prejudice" as required by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

This case thus presents some troublesome aspects of federal law concerning habeas cases that implicate two separate doctrines whose exact parameters are still being formulated by the Supreme Court, *i.e.*, the ability of a federal court to reach the merits of a constitutional issue barred by a state's procedural rule under *Sykes* and the determination of when a petitioner has been denied the right to effective assistance of counsel under *Strickland.* That the doctrines are separate and are based upon different considerations was made clear in *Strickland:*

The principles governing ineffectiveness claims should apply in federal collateral proceedings as they do on direct appeal or in motions for a new trial. As indicated by the 'cause and prejudice' test for overcoming procedural waivers of claims of error, the presumption that a criminal judgment is final is at its strongest in collateral attacks on that judgment. See *United States v. Frady*, 456 U.S. 152, 162–169 [102 S.Ct. 1584, 1591–1595, 71 L.Ed.2d 816] (1982); *Engle v. Isaac*, 456 U.S. 107, 126–129 [102 S.Ct. 1558, 1571–1572, 71 L.Ed.2d 783] (1982). An ineffectiveness claim, however, as our articulation of the standards that govern decision of such claims makes clear, is an attack on the fundamental fairness of the proceeding whose result is challenged. Since fundamental fairness is the central concern of the writ of

habeas corpus, see *id.*, at 126 [102 S.Ct. at 1571], no special standards ought to apply to ineffectiveness claims made in habeas proceedings.

*Strickland*, 466 U.S. at 697–98, 104 S.Ct. at 2070 (parallel citations omitted).

This case also presents, in my view, the basic question of whether a federal court will defer to a state's enforcement of its procedural bar to appellate review if that bar resulted from a constitutional violation of a defendant's right to the effective assistance of counsel. It is logical to consider petitioner's ineffective assistance of counsel claim before considering the possible applicability of *Sykes*, because consideration of the ineffective assistance of counsel claim is not restricted by any state procedural rule in this case.

## III.

In considering the ineffective assistance of counsel claim in this case, it is necessary to determine, first, whether the attorney's failure to renew the motion with the resultant loss of petitioner's appeal constituted in itself a violation of petitioner's constitutional right to the effective assistance of counsel without regard to *Strickland* (Part III A); second, whether the *Strickland* prejudice requirement applies to errors that deprive a client of his appeal, as opposed to errors that occur during the course of trial that might or might not affect the jury's verdict (Part III B); third, whether, assuming *Strickland* does apply, the loss of appellate rights in itself supports the "prejudice" prong under *Strickland* (Part III C); and, finally, assuming *Strickland* does apply and the loss of appellate rights itself is not sufficient to constitute "prejudice," whether the federal court should decide the merits of the lost appeal or only the question of whether there is a "reasonable probability" that, but for counsel's unprofessional errors, the appeal would have been successful. (Part III D.)

Once it is determined that the constitutional deprivation of effective assistance of counsel occurred, it only remains to determine whether, in the face of that deprivation, a federal court will defer to Kentucky's procedural rule and permit the state to deprive petitioner of his appeal as of right. (Part IV.)

### A.

Although petitioner sought to convince the jury that an assailant hidden in the woods fired at petitioner, Jones, and Drew, it is apparent that petitioner's real defense rested on the state's inability to prove that Drew was killed by petitioner. In support of petitioner's motion for a directed verdict at the close of the state's case in chief, petitioner's attorney forcibly argued that the state's evidence was totally inadequate to support a verdict of guilty of murder. Emphasizing that "mere presence at the scene and opportunity are not enough to take a case to the jury," petitioner's attorney summarized his argument as follows:

> The due process clause in the United States Constitution protects an accused against conviction except upon proof beyond a reasonable doubt of every fact and every element necessary to prove the crime of murder, and the Commonwealth case clearly does not measure up to this standard, therefore I move for a directed verdict of acquittal.

(Vol. I, Appendix for Appellant, p. 165.)

The trial judge acknowledged that the state's evidence "may be somewhat weak" but denied the motion, primarily because petitioner's statement about an ambush from the woods was inconsistent with the autopsy report and the physical evidence at the scene. (Vol. I, Appendix for Appellant, p. 165.)

In spite of the fact that the state's evidence, indeed, was "somewhat weak," as the trial judge acknowledged, and that this constituted petitioner's strongest, if not only, defense to the charge that he murdered Drew, Maupin's attorney nevertheless failed to renew petitioner's motion for a directed verdict at the close of all the evidence as required by the *Kimbrough* rule. Although the *Kimbrough* rule had been announced just a short time prior to

commencement of petitioner's trial,[2] his attorney was aware of the *Kimbrough* decision and of the need to renew the motion for a directed verdict at the close of all the evidence in order to preserve petitioner's right to appeal on the insufficiency of the evidence. (Vol. II, Appendix for Appellant, p. 11.) Furthermore, petitioner's attorney stated that "... my whole basis of appeal was going to be insufficiency of evidence...." (Vol. II, Appendix for Appellant, p. 13.) "I felt it was a very weak case—strictly circumstantial evidence." (Vol. II, Appendix for Appellant, p. 28.) Not only did petitioner's attorney fail to make the required motion at the close of all the evidence, but he also failed to take any formal steps to obtain relief from this default after it had been called to his attention.[3]

The failure by Maupin's attorney to comply with the *Kimbrough* rule resulted in the denial of petitioner's right to appeal his conviction on the only ground available to him—the insufficiency of the evidence to support a conviction of murder. The making of the required motion at the close of all the evidence was as much a predicate to an appeal in this case as was the filing of a notice of appeal, and it is well established that "[b]asic procedural errors are also considered in determining whether assistance of counsel has been constitutionally adequate." *Gilbert v. Sowders*, 646 F.2d 1146, 1150 (6th Cir.1981) (Jones, concurring), *citing Beasley v. United States*, 491 F.2d 687, 693 (6th Cir.1974). Under similar circumstances, courts have found that a defendant has been denied effective assistance of counsel when the malfeasance or nonfea-

sance of his or her counsel effectively deprived a defendant of the right to appeal, and it is not necessary in such a case for the defendant to show that his appeal would be successful. *Cf. Rodriquez v. United States*, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969); *Miller v. McCarthy*, 607 F.2d 854 (9th Cir.1979). In *Gilbert, supra*, appellate counsel's failure to follow Kentucky's procedural rules resulted in the appeal being dismissed. This Court affirmed the district court's grant of a writ of habeas corpus. In his concurring opinion, Judge Jones noted:

> The harmless error rule is not applicable where a denial of effective assistance of counsel is found. *Beasley*, 491 F.2d at 696. *Compare, McKeldin v. Rose*, 631 F.2d 458, No. 80–1198 (6th Cir. October 8, 1980) (per curiam). Consequently, the merits of Gilbert's state appeal of right need not be examined.

*Gilbert*, 646 F.2d at 1150.

**B.**

As indicated above, when ineffective assistance of counsel has been established by showing a negligent failure of counsel to comply with basic procedural rules resulting in the loss of defendant's appellate rights, it is not necessary to further show that defendant was "prejudiced" because his appeal was meritorious. For this reason, I question whether the *Strickland* analysis is applicable to the facts of this case.

*Strickland* does require, as the majority notes, a finding of prejudice in considering ineffective assistance of counsel claims that result from failures of counsel during

---

**2.** The decision in *Kimbrough v. Commonwealth of Kentucky* was issued April 1, 1977 and rehearing was denied June 10, 1977; petitioner's trial commenced in August, 1977.

**3.** According to the attorney's testimony at the evidentiary hearing on the habeas petition, he thought he had made the required motion. He therefore contacted the state's attorney and proposed a stipulation that he had in fact made the required motion at the close of all the evidence. When this was refused, petitioner's attorney spoke with the trial judge who allegedly informed him that "I do not feel that I can do

anything about it." (Vol. II, Appendix for Appellant, p. 15.) Rule 12.60, Ky. Rules of Crim.P., in effect at that time, set forth a procedure for correcting any omissions in the record and for the transmission of a supplemental record to the appellate court.

Petitioner's attorney filed no motion to correct the record and at the hearing admitted that it would have been "the better practice" to have made the motion "in order to have preserved the record for Mr. Maupin." (Vol. II, Appendix for Appellant 27.)

a trial. In discussing the prejudice requirement, it is clear that the Supreme Court was referring to the types of errors that can and do occur in the course of the trial itself that conceivably could affect the jury's verdict. As the Court pointed out, "some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways.... Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland,* 466 U.S. at 696, 104 S.Ct. at 2069. Thus, *Strickland* requires a review of the entire record in order to determine "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. 2069.

*Strickland* attempted to formulate guidelines for determining, first, when an attorney's performance falls below the standard guaranteed by the Constitution, in light of a presumption that counsel "made all significant decisions in the exercise of reasonable professional judgment," *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066, and second, whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. As I read *Strickland,* it deals with errors occurring during the trial that may or may not have affected the jury's verdict—not with the type of error involved in the present case. The error in the present case had no effect on the jury's verdict. To the contrary, the error was a failure to make a particular type of motion *after* all the evidence was in, a motion that was essential under Kentucky law in order to give petitioner a right to appeal the issue of the sufficiency of the evidence to support a conviction. In the present case, counsel's error deprived petitioner of his right to appellate review of the sufficiency of the evidence, and this error was sufficient, in my view, to establish a violation of petition-

er's constitutional right to effective assistance of counsel.

### C.

The *Strickland* two-pronged test of inadequate performance and prejudice, as the Court noted, is not a mechanical rule, *Strickland,* 104 S.Ct. at 2069, but if "prejudice" must be shown as a result of the attorney's failure in the present case, I believe that such a requirement is clearly met. In *Evitts v. Lucey,* —— U.S. ——, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), a convicted defendant's attorney failed to comply with a Kentucky state procedural rule, and as a result defendant's appeal was dismissed. The Supreme Court, quoting from *Strickland* regarding the right of a defendant to effective representation, observed that the attorney's failure in *Evitts* was "particularly egregious" and unquestionably constituted ineffective assistance of counsel which, incidentally, was not even disputed in that case.

> Our cases dealing with the right to counsel—whether at trial or on appeal—have often focused on the defendant's need for an attorney to meet the adversary presentation of the prosecutor. See, *e.g., Douglas v. California,* 372 U.S. 353, 358 [83 S.Ct. 814, 817, 9 L.Ed.2d 811] (1963) (noting the benefit of 'counsel's examination into the record, research of the law, and marshalling of arguments on [client's] behalf'). Such cases emphasize the defendant's need for counsel in order to obtain a *favorable* decision. The facts of this case emphasize a different, albeit related, aspect of counsel's role, that of expert professional whose assistance is necessary in a legal system governed by complex rules and procedures for the defendant to obtain a decision at all— much less a favorable decision on the merits of the case. In a situation like that here, counsel's failure was particularly egregious in that it essentially waived respondent's opportunity to make a case on the merits; in this sense, it is difficult to distinguish respondent's situation from that of someone who had no counsel at all. Cf. *Anders v. California,*

386 U.S. 738 [87 S.Ct. 1396, 18 L.Ed.2d 493] (1967); *Entsminger v. Iowa,* 386 U.S. 748 [87 S.Ct. 1402, 18 L.Ed.2d 501] (1967).

*Evitts,* 105 S.Ct. at 835 n. 6 (emphasis in original).

In referring to the finding of ineffective assistance of counsel, the Supreme Court observed that "counsel's failure to obey a simple court rule that could have such drastic consequences required this finding." *Id.* at 833. *Evitts,* decided after *Strickland,* supports the view that failure to preserve appellate rights can itself constitute ineffective assistance of counsel. To the extent "prejudice" need be shown, it is shown by the "drastic consequences" inherent in a loss of petitioner's right of appellate review.

### D.

If, as the majority opinion holds, the *Strickland* analysis is applicable to the attorney's error in this case and if, contrary to my belief, the loss of petitioner's right to appeal is not in and of itself sufficient "prejudice" to establish the ineffective assistance of counsel claim, then the question remains as to what *is* sufficient to establish "prejudice" as a result of the attorney's error in this case. The approach of the majority members is to take the claim petitioner was prevented from submitting to the Supreme Court of Kentucky—the insufficiency of the evidence claim—and to decide themselves the merits of that claim. This is an "outcome-determinative" approach; the majority is saying, in effect, that the petitioner was not prejudiced because his appeal had no merit and thus the outcome of his case, *i.e.,* his conviction of murder, was not affected. While that approach may have merit in the cause and prejudice analysis of *Sykes,* the required showing of prejudice is lower under *Strickland* when determining whether there was a constitutional violation of a defendant's

right to effective assistance of counsel. For errors occurring at trial that could affect the jury's verdict, it is required only that there be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Transposing this standard to apply it to errors that could affect an appeal from that verdict would require only that there be a "reasonable probability that, but for counsel's unprofessional errors, the result of the appeal would have been different." This would not require a federal court to determine the merits of the lost appeal—as the majority does in this case—but only to determine if there is a "reasonable probability" that the appeal to the state's appellate court would have been successful.

There can be no doubt that in the present case there is at least a "reasonable probability" that if Maupin's attorney had not failed to renew the required motion at the close of all the evidence, the Kentucky Supreme Court would have reversed Maupin's conviction—as it did his co-defendant Jones'—on the insufficiency of the evidence claim. The physical evidence was identical in both cases and, indeed, pointed more toward Jones being the assailant than it did toward Maupin. (Part VI, *infra.*)

Therefore, even under the majority's requirement that *Strickland* be applied to determine "prejudice," there is a "reasonable probability" of petitioner's success on appeal which would support the "prejudice prong" of *Strickland* and complete the finding of ineffective assistance of counsel.[4]

### IV.

Once it is determined that the attorney's failure to comply with the procedural requirement deprived his client of an appeal on the merits of his defense and constituted ineffective assistance of counsel, the

---

**4.** Furthermore, even if it were proper for the majority to decide the merits of Maupin's lost appeal as part of a *Strickland* "prejudice" analysis, I disagree that the evidence against Maupin

was sufficient to convict him of murder under the standard of *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). (Part VI, *infra.*).

effect of such a constitutional violation on a state's procedural default rule is found in the *Evitts* decision.

In *Evitts v. Lucey*, as noted above, the Supreme Court considered the effect of a failure to follow a state procedural rule when that failure was due to ineffective assistance of counsel, with the resulting loss of a convicted defendant's appellate rights. In *Evitts*, an attorney for the defendant had failed to file a statement of appeal with the Kentucky Court of Appeals as required by a procedural rule of that court. As a result of the attorney's failure to comply with the procedural rule, the defendant's appeal was dismissed. In subsequent habeas proceedings, petitioner claimed that dismissal of his appeal on this ground was a denial of due process under the Fourteenth Amendment. The district court granted a conditional writ and this Court affirmed. The Supreme Court, in affirming this Court, held that defendant was entitled to the effective assistance of counsel on appeal, and inasmuch as defendant did not have effective assistance of counsel on appeal, the appeal was "not adjudicated in accord with due process of law." *Evitts*, 105 S.Ct. at 836. Pertinent to the present case was the Court's observation that:

> A system of appeal as of right is established precisely to assure that only those who are validly convicted have their freedom drastically curtailed. A State may not extinguish this right because another right of the appellant—the right to effective assistance of counsel—has been violated.

*Id.* at 838.

While I recognize that *Evitts* involved the neglect of appellate counsel to comply with a procedural rule of the appellate court, I cannot see any meaningful distinction between that case and the present one. In this case, as in *Evitts*, the defendant's

attorney failed to comply with a state court's procedural rule; in both cases, the neglect was sufficient to constitute ineffective assistance of counsel; in both cases, as a result of the ineffective assistance of counsel, defendants lost the right to have their appeals decided on the merits; in both cases, the Kentucky appellate courts extinguished defendant's appellate rights "because another right of the appellant—the right to effective assistance of counsel—has been violated." *Evitts*, 105 S.Ct. at 838.

I think it follows that a state court cannot refuse to review a convicted defendant's claimed error on appeal when the refusal to grant a review is based on a procedural default that is due to a violation of the defendant's constitutional right to the effective assistance of counsel. If this is true, then it makes no difference whether the ineffective assistance of counsel and procedural default occurred at the trial level or at the appellate level. In either case, the result is the same: the denial of the appeal is a denial of the process due a defendant at both the trial and appellate levels. *Cf., Riley v. Wyrick*, 712 F.2d 382 (8th Cir.1983).

This conclusion does not conflict with *Strickland* or *Sykes*. *Strickland*, as noted, dealt with the standards to be applied to a claim of ineffective assistance of trial counsel and did *not* involve any issue of a procedural default resulting in a denial of appellate rights.[5] *Sykes*, although dealing with the procedural defaults that preclude appellate review, did *not* deal with defaults caused by a violation of defendant's constitutional right to effective assistance of counsel. As Justice Brennan observed in his dissenting opinion:

> If he [attorney for the defendant] should unreasonably permit such rules [procedural rules of the forum in which he

---

**5.** This Court has applied the *Strickland* standard in determining whether a defendant has been denied effective assistance of counsel on appeal. In *Bowen v. Foltz*, 763 F.2d 191 (6th Cir.1985), the Court held that the effect of the attorney's failure to raise a particular issue on appeal was

too speculative to meet the prejudice requirement of *Strickland*. It is a far different situation, however, when the attorney's failure results in the appeal itself being denied a convicted defendant.

practices] to bar the assertion of the colorable constitutional claims of his client, then his conduct may well fall below the level of competence that can fairly be expected of him. For almost 40 years it has been established that inadequacy of counsel undercuts the very competence and jurisdiction of the trial court and is always open to collateral review. *Wainwright v. Sykes,* 433 U.S. at 118, 97 S.Ct. at 2522.

Inadequacy of counsel that results in a procedural bar to appellate review also undercuts the ability of an appellate court to apply that procedural bar and to refuse to hear the appeal. *Evitts v. Lucey, supra.*

I believe that where, as here, the procedural bar to review of a defendant's conviction is due to defense attorney's failure to exercise the professional competence required of him, a federal court will not defer to the state's procedural bar, and it is not required that the petitioner in a habeas action further demonstrate that he has been "prejudiced" by the denial of his appeal. He has in fact been prejudiced by the

loss of his appellate review rights, and it is not required that he prove that the appeal, if allowed, would be successful.[6]

Therefore, on petitioner's claim of a denial of effective assistance of counsel, I would hold that such a denial occurred, that as a result petitioner lost his right to appeal his conviction on the insufficiency of the evidence, that the State of Kentucky cannot extinguish the right to appeal because another right of petitioner—the right to effective assistance of counsel—has been violated, and, consequently, that this case should be remanded to the district court for the issuance of a conditional writ of habeas corpus, the condition being that the state of Kentucky must permit Maupin an appeal on the issue of the sufficiency of the evidence to support his conviction. In this manner, the wrong done as a result of the ineffective assistance of counsel can be rectified.[7]

### V.

Inasmuch as a denial of petitioner's right to effective assistance of counsel, with the

**6.** In the context of its discussion of the prejudice prong of *Sykes,* the majority states that the Kentucky Supreme Court's refusal to consider Maupin's claim because of his procedural default is irrelevant in the prejudice analysis. "In fact, if a petitioner could establish prejudice by simply showing that an appellate court refused to consider his claim, the 'prejudice' prong of *Sykes* would be meaningless." Majority opinion, p. 139 n. 3. This is true in cases in which the *Sykes* analysis applies, *i.e.,* cases in which a federal court defers to the state's procedural rule and in which there is no finding of ineffective assistance of counsel. In such a case, the defendant has obviously suffered "prejudice" in the sense that the state's procedural rule bars appellate review of the claimed error, but, for the policy considerations given in *Sykes,* the federal court will defer to the state's rule unless there is a showing of cause for the omission and prejudice in the sense that the defendant will be "the victim of a miscarriage of justice," *Sykes,* 433 U.S. at 91, 97 S.Ct. at 2508, if the federal court does not adjudicate the constitutional claim barred by the state's procedural rule. In Parts V and VI of this opinion dealing with the *Sykes* analysis, the "prejudice" prong, therefore, is not based on the denial of appellate rights but is based on the fact that defendant's conviction was not supported by evidence sufficient to meet the *Jackson* standard.

In the context of an ineffective assistance of counsel claim, however, a federal court is unfet-

tered by the policy considerations involved in *Sykes,* and even finality concerns are not as great. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. The Supreme Court has not yet applied the *Strickland* prejudice prong as such to unprofessional errors that result in a denial of appellate rights, but *Evitts* strongly supports the view that in such a case the denial of appellate rights in and of itself constitutes prejudice to the defendant.

**7.** In *Carpenter v. Leibson,* 683 F.2d 169 (6th Cir.1982), this Court granted petitions for writs of habeas corpus in a case involving Kentucky defendants whose attorney had failed to renew their motions for directed verdicts at the close of all the evidence. Judge Kennedy rejected application of the *Kimbrough* rule in that case on retroactivity grounds. Judge Kennedy noted that the cases did not need to be remanded to the state courts inasmuch as the sufficiency of the evidence is a legal test governed by the *Jackson* standard which "can be applied perfectly well by a Court of Appeals for the first time on appeal." 683 F.2d at 176 n. 2. In the *Carpenter* case, however, the Supreme Court of Kentucky had in fact considered the sufficiency of the evidence in a decision which it later withdrew when it decided to apply the *Kimbrough* rule.

resulting loss of his right to appeal his conviction, constituted in itself a constitutional violation requiring relief, I do not feel it is necessary to apply the cause and prejudice test of *Sykes* in this case. However, assuming *arguendo* that the nonfeasance of counsel in this case did not rise to the level of ineffective assistance of counsel, that there is consequently no constitutional·bar to the state's enforcement of its procedural default rule, and that it is therefore proper, as the District Judge and the majority members of this panel agreed, to then apply the *Sykes* cause and prejudice analysis, I believe there are some difficulties in the majority's application of that analysis to the particular error of counsel in this case.

The majority opinion requires, in a case where the state has applied a procedural bar, that the federal court keep separate a consideration of cause and prejudice under *Sykes* from a consideration of the merits of the constitutional claim in question, citing *Ford v. Strickland*, 696 F.2d 804, 844, 858–59 (11th Cir.) (en banc) (Kravitz, J. concurring in part and dissenting in part), *cert. denied*, 464 U.S. 865, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983). The position of Judge Kravitz in the *Ford* case, adopted by the majority in this case, is that the question of prejudice in such cases "is a component of the procedural question whether a habeas petitioner has waived his right to raise a constitutional issue in federal court. As such, prejudice is an issue that, along with the other components of the waiver analysis, must be determined *prerequisite* to deciding the merits of the substantive constitutional claim.... In order to decide whether prejudice exists *before* deciding the merits of the claim· in question, the court must *assume*, for purposes of resolving the prejudice issue, that constitutional error has been committed." *Ford*, 696 F.2d at 858–859 (emphasis in original).

I feel that this effort to neatly "bifurcate" the cause and prejudice issues from the underlying constitutional claim is not only unnecessary and unwise, but it is also impossible to fairly apply in every procedural bar case. I do not regard prejudice as "a component of the procedural question whether a habeas petitioner has waived his right to raise a constitutional issue in federal court"; it is instead, in my view, a component of the basic, substantive question of whether the denial of relief to a habeas petitioner in such cases will result in a miscarriage of justice. In considering this question, the entire record, including the character of the constitutional right at stake, must be considered. I see no reason why the validity of the constitutional claim must be either set aside or "assumed" as part of a two phase analysis or why there is any great problem created by a "merger" of the cause and prejudice analysis with a consideration of the merits of the claimed error. "Prejudice" is not simply a key to unlock procedural restraints on the federal court so that it is free to consider a constitutional claim. "Prejudice," instead, is the guiding criterion to a determination of whether a refusal to grant relief in a particular case would result in a miscarriage of justice.

It is, of course, true that in some cases the absence of prejudice is so apparent from the entire record that it is unnecessary to consider any question of "cause." The absence of prejudice also may be so apparent that the error in the trial court may be conceded because there is no likelihood that the error affected the outcome of the case. It does not follow, however, that it is a formal requirement in every case, as the majority holds, that a federal court must somehow keep cause and prejudice "analytically distinct" from the underlying constitutional claim and must always assume the validity of the constitutional claim in making the *Sykes* analysis. This unnecessary refinement of the *Sykes* analysis leads the majority to the unusual conclusion that it must assume that the evidence in this case does not meet the *Jackson* standard in order for it to consider whether the evidence does meet the *Jackson* standard before it finds that the evidence in fact meets the *Jackson* standard.

The problems inherent in bifurcating the issue of prejudice from the merits of the

underlying constitutional claim are illustrated by this case. Unlike contemporaneous objection cases involving a single bit of evidence or a single jury instruction to be considered in the context of the entire record for prejudice, the claimed error *here* is *itself* based on the entire record. With this type of constitutional claim, it is essential to review the record to determine whether petitioner's claim of insufficiency of the evidence is strong enough to show that he has been prejudiced by the error committed by his attorney. If the evidence is not sufficient to support a conviction, the petitioner has obviously been prejudiced, and while this may well constitute a "merger" of the *Sykes* issue with the merits, it is simply the result of the nature of this particular constitutional claim. Since there is a lack of evidence sufficient to support the conviction, it would be a miscarriage of justice to allow the conviction to stand.[8]

Therefore, in the present case, where the "cause" requirement of *Sykes* is conceded by the state, a federal court must examine the record to determine whether the evidence is sufficient to support petitioner's conviction. If it is not—if the evidence does not meet the *Jackson* standard—then petitioner has been prejudiced by the procedural default and the federal court must grant him relief to prevent him from being "the victim of a miscarriage of justice." *Sykes*, 433 U.S. at 91, 97 S.Ct. at 2508.

An examination of the record in this case shows, as set forth in Part VI below, that the evidence was *not* sufficient to convince a rational jury beyond a reasonable doubt that petitioner was guilty of murder.

## VI.

At best, the evidence offered by the state was sufficient to convince a rational trier of fact that three men, all of whom had been drinking heavily, were involved, as the majority puts it, "in a drunken brawl," in the middle of the night on an isolated road near a hidden still where they had gone to get more moonshine to drink. All three, William Drew, Arthur Jones and Ronnie Lee Maupin, were wounded, and Drew's injury proved to be fatal. While I agree that the jury was free to disbelieve Maupin's version of what happened—that they were shot by someone in the woods as they came back to the road from the still— the evidence remained totally insufficient to convince a rational jury beyond a reasonable doubt that it was in fact Maupin who shot Drew, much less that he had the required intent to kill Drew. The evidence, to the contrary, points to Jones as the more likely assailant, but even that evidence was held by the Kentucky Supreme Court, properly so, to be insufficient to support Jones' conviction for murder. Who in fact killed Billy Drew on Drew Valley Road remains a mystery.

That the men were drunk is hardly in doubt. Maupin's blood alcohol level, from a sample drawn shortly after midnight on August 9, 1976, was 0.18 per cent. (Tr. 123, 208.)[9] Drew's blood alcohol level was 0.21 per cent. (Tr. 209.) When Maupin, Drew and Jones were at Fred Tankersley's house earlier that night, Tankersley described them all as "staggering drunk." (Tr. 142.) The three of them left the Tankersley house amicably, driving in the direction of Drew Valley Road. (Tr. 139.) After stopping at George Drew's house, the three men continued to drink and proceeded down Drew Valley Road to a point where they stopped the car and got out to get the moonshine from a still located

---

**8.** This approach is consistent with the approach taken by this Court and other federal courts in direct appeals involving a failure of an attorney to renew a motion for judgment of acquittal at the close of all the evidence. The effect of the failure is to foreclose an appeal on the sufficiency of the evidence, unless defendant can show "a manifest miscarriage of justice." *United States v. Faymore*, 736 F.2d 328, 334 (6th Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 213, 83 L.Ed.2d 143 (1984). *United States v. Van Dyke*, 605 F.2d 220 (6th Cir.1979), *cert. denied*, 444 U.S. 994, 100 S.Ct. 529, 62 L.Ed.2d 425 (1979); *United States v. Freeze*, 707 F.2d 132 (5th Cir. 1983); *United States v. Doe*, 664 F.2d 546 (5th Cir.1981).

**9.** "Tr." refers to the state trial transcript in Vol. I of the Appellant's Appendix.

about .2 miles from the road. At some point, after returning from the still to the road, the shooting took place.

Maupin himself was shot in the back of his upper arm. (Tr. 182.) Jones "had been hit over the head or shot once, a big gash in his head." (Tr. 183.) Drew, it was later found, suffered a shotgun wound to his left arm, (Tr. 56, 57, 157), from which he bled to death on the road. (Tr. 159–160.) A large pool of blood marked the place where Drew bled to death and in that general area was a .22 caliber pistol with blood on it. (Tr. 55, 64.) There were five spent cartridges in the pistol's cylinder, (Tr. 116), and Detective McWhorter testified that this pistol "was believed to be the victim's." (Tr. 124.) A trail of blood went from the large pool of blood back up the road approximately thirty feet to a smaller pool of blood—presumably the point where Drew was hit by a shotgun blast in the arm before staggering down the road and collapsing. Across the road from the smaller pool of blood were three spent twenty gauge shotgun hulls and one spent twelve gauge shotgun hull. (Tr. 55–56, 59, 102, 105.) The spent twenty gauge hulls were Winchester Super X no. 5 shotgun shells. While standing in the vicinity of the spent shells and looking toward the smaller pool of blood, McWhorter observed in the bushes broken limbs and twigs which he believed to be the path of the shotgun blast that hit Drew. (Tr. 62, 102–103, 114–115.) He removed from a tree a piece of bark with No. 5 shotgun pellets embedded in it. (Tr. 60.) In the same area as the spent shells was a small pool of blood from which a trail of blood extended down the road to the foot of Drew's body. (Tr. 55, 61, 113.)

When Maupin and Jones arrived at the Phillips' house following the shooting, Maupin had no weapon, (Tr. 38, 48, 213), but according to the testimony of both Gregg and Wally Phillips, Jones had a single barrel shotgun, (Tr. 38, 48, 213), and Jones asked Gregg Phillips for some twenty gauge shotgun shells. (Tr. 41.) Jones took the shotgun with him when he left the Phillips' house, (Tr. 39, 48, 213), and had it with him later that night when he awakened Laura and Bond Mosher. (Tr. 149–150.)

After Maupin and Jones left the Phillips' house, the police were called and were told that Maupin and Jones had been shot in Drew Valley. (Tr. 214.) The police, however, refused to go into Drew Valley to investigate. (Tr. 214.)

The next day, after Maupin had been treated at the hospital for his wound and had been charged with public drunkenness, he, his brother, Gene Maupin, and Jones went back to Drew Valley to get petitioner's car from the ditch. When they discovered Drew's body they went to the Phillips' home and reported "a dead man down there," (Tr. 1, 188, 215), and the police were called.

In the course of the investigation into Drew's death, Maupin voluntarily gave blood samples, submitted to a firearms residue test, and gave oral and written statements to the police. (Tr. 187–188.) Detective McWhorter found no evidence that Maupin and Drew ever fought or argued and could not determine any motive for the killing of William Drew. (Tr. 122.)

To the extent the evidence, all of which was circumstantial, indicated that Drew was shot by either Maupin or Jones at close range by a shotgun, the evidence was certainly stronger that Jones was the assailant. The jury could have found that the blast came from the point where three spent twenty gauge shotgun hulls were found on the road, and Jones was carrying a shotgun at the Phillips house immediately after the shooting and was asking for twenty gauge shotgun shells. Maupin himself had been shot in the back of his arm which, if Drew had fired the shot from his .22 caliber pistol, would have meant that Maupin's back was to Drew when the shot was fired. In spite of the stronger evidence that Jones and not Maupin was the assailant, the Kentucky Supreme Court held that the evidence was still insufficient to support Jones' conviction of murder. In words that apply with equal, if not greater

force, to Maupin, the Kentucky Supreme Court said:

> We have consistently held that evidence that one was in the company of the victim shortly before a murder is insufficient to prove a criminal act or agency. *Campbell v. Commonwealth*, Ky., 564 S.W.2d 528, 530 (1978). In addition, it is well settled that mere presence at the scene of a crime does not constitute evidence that a person committed or aided in the commission of a crime. *Rose v. Commonwealth*, Ky., 385 S.W.2d 202, 204 (1964). Here it is readily apparent that the Commonwealth simply failed to prove its case, and under the evidence as a whole it was clearly unreasonable for the jury to find appellant guilty.

I find it equally unreasonable for the jury to have found Maupin guilty. Yet, today, Jones is free and Maupin, whose attorney failed to renew the directed verdict motion at the close of all the evidence and thus deprived Maupin of his right of appeal to the Kentucky Supreme Court, is serving a twenty year sentence in prison.

> Due process commands that no man shall lose his liberty unless the government has borne the burden of ... convincing the factfinder of his guilt.

*In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970).

The state fell woefully short of meeting its burden in this case. No rational trier of fact, in my opinion, could have found that the state proved the essential elements of the crime of murder beyond a reasonable doubt, *Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. at 2789.

For the reasons set forth above, I respectfully dissent from the affirmance of the district court's denial of the writ of habeas corpus in this case.