[NOT RECOMMENDED FOR FULL-TEXT PUBLICATION]
File Name: 06a0407n.06
Filed: June 16, 2006

No. 04-3830

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| LEROY JOHNSON, JR., | ) | |
| | ) | |
| **Petitioner-Appellant**, | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| JULIUS C. WILSON, | ) | |
| | ) | **MEMORANDUM** |
| | ) | **OPINION** |
| | ) | |
| **Respondent-Appellee**. | ) | |
| _____ | ) | |

**Before: COLE and KEITH , Circuit Judges; MILLS, District Judge.**[*]

**RICHARD MILLS, District Judge.**

## I. BACKGROUND

Petitioner-Appellant Leroy Johnson, Jr. ("Johnson") has an IQ of 74, which means he has a borderline mental impairment. On November 22, 1996, he had an argument with Martha Johnson ("Martha"), his former live-in girlfriend. Martha

_____

[*] The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

was staying with her aunt, Lillie Mae Swain ("Ms. Swain"), in Youngstown, OH at the time.

On the day of the argument, Johnson made several trips to the Swain residence. He threatened Martha and dropped off her clothing, after he cut it up. Shortly before 11:00 p.m., Johnson broke into the Swain residence. Martha heard Johnson break into the house and listened as he called for her. Johnson went upstairs to look for Martha and Martha hid under the bed.

While in the house, Johnson confronted Ms. Swain and her companion, Wade Harvin ("Mr. Harvin"). Johnson demanded to know where Martha and then proceeded to fatally shoot Ms. Swain and Mr. Harvin to death. Police arrested Johnson the next day after pursuing him. The police questioned Johnson, and Johnson confessed.

The Mahoning County Grand Jury indicted Johnson on: (1) two counts of aggravated murder, pursuant to O.R.C. § 2903.01 with death penalty specifications and a firearm specification; (2) one count of aggravated burglary pursuant to O.R.C. § 2911.11(A)(1)(B), with a firearm specification; and (3) one count of failing to comply with an order or signal of a police officer. Johnson initially pled not guilty to the charges and filed two motions to suppress. The state trial court denied Johnson's motions on January 7, 1999.

Johnson waived his right to a jury trial and was tried by a three-member panel of judges. Johnson and the prosecution agreed on a joint-stipulation of facts, which stated that he committed the murders. In exchange, the prosecution agreed to dismiss the failure to comply charge, forgo the death penalty, recommend life without parole on the murder charges, recommend a ten year sentence on the aggravated burglary charge, and recommend a three year sentence for the firearm specification. The trial court dismissed the failure to comply charge and found Johnson guilty of the remaining counts on January 29, 1999. On February 9, 1999, the court sentenced Johnson to two consecutive life terms without the possibility of parole for the murder charges, ten years for the aggravated battery charge, and three years for the firearm specification.

Through counsel, Johnson timely appealed the trial court's decision to the Ohio Court of Appeals. The court rejected Johnson's appeal on November 6, 2001. Johnson moved to file a delayed appeal, but the Ohio Supreme Court denied his motion on September 4, 2002.

While Johnson's direct appeal was pending, on June 12, 2000, he filed a pro se petition for post-conviction relief. In the petition, Johnson alleged that his Sixth and Fourteenth Amendment rights to a fair trial were violated, his Fifth Amendment rights were violated because police denied him access to counsel

3

during questioning, and his Sixth Amendment right to counsel was violated because his attorney was ineffective. The trial court denied Johnson's post-conviction petition on June 10, 2000. Johnson did not appeal the trial court's decision. However, on October 31, 2002, he moved the trial court to rule on his request for post-conviction relief. The trial court denied Johnson's motion on November 13, 2002. Johnson also filed a "Motion for the Facts and Findings Discloser," which was denied on December 13, 2002.

On November 26, 2002, Johnson moved to reopen his appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedures. The motion asserted that the trial court erred by not suppressing his confession. Johnson's attempt to reopen the case was denied on February 13, 2003. Johnson did not appeal the denial to the Ohio Supreme Court.

On June 26, 2003, Johnson filed a habeas petition pursuant to 28 U.S.C. § 2254. He alleged that: (1) his Fifth Amendment rights were violated when police coerced his statement and prevented him from calling his attorney; (2) his appellate counsel was ineffective; (3) his Fifth and Fourteenth Amendment rights were violated when police compelled him to make a statement; and (4) the trial court errantly allowed his involuntary statement to be admitted. The district court referred Johnson's case to United States Magistrate Judge George J. Limbert.

4

Magistrate Judge Limbert issued a Report and Recommendation ("R&R") finding that Johnson had procedurally defaulted on his claims by failing to raise them on direct appeal. Johnson contended that the procedural default should be excused because of his borderline IQ of 74. The R&R rejected this argument and Johnson did not object. United States District Judge John R. Adams adopted the R&R on June 14, 2004, denying Johnson's habeas petition in its entirety. Johnson timely appealed to this Court on June 21, 2004.

## II.  JURISDICTION

This Court has jurisdiction over Johnson's appeal pursuant to 28 U.S.C. § 2253.

## III.  ANALYSIS

### A.  Standard of Review

When reviewing the denial of a § 2254 habeas petition, this Court reviews a district court's legal conclusions *de novo* and its factual findings for clear error. Hill v. Hofbauer, 337 F.3d 706, 710 (6th Cir. 2003). Whether there is cause to excuse procedural default is a question of law. Burroughs v. Makowski, 411 F.3d 665, 667 (6th Cir. 2005).

### B.  Procedural Default

"A petitioner procedurally defaults claims for habeas relief if the petitioner has not presented those claims to the state courts in accordance with the state's

procedural rules." Simpson v. Jones, 238 F.3d 399, 406 (6th Cir. 2000). This Circuit applies the test enunciated in Maupin v. Smith , 785 F.3d, 135, 138 (6th Cir. 1986) to determine whether a claim is procedurally defaulted. Under the Maupin test, the Court considers: (1) whether there is a procedural rule that the petitioner failed to follow; (2) whether the state courts actually enforced the rule; (3) whether the procedural default is an "adequate and independent" ground on which the state can rely to foreclose review of a federal constitutional claim; and (4) whether the petitioner has shown "cause" for his failure to follow the rule and "prejudice" resulting therefrom. Id. Even where a petitioner fails to show cause and prejudice, "a court may notice an otherwise defaulted claim if it concludes that petitioner has shown by clear and convincing evidence that but for constitutional error no reasonable juror would have found him guilty of the crime . . . ." Greer v. Mitchell, 264 F.3d 663, 673 (6th Cir.2001).

In Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639 (1986), the Supreme Court defined cause sufficient to excuse procedural default as "some objective factor external to the defense," which precludes petitioner's ability to pursue his claim in state court. The Murray court concluded that an attorney's failure to preserve a claim before the state court did not constitute cause for excusing procedural default. Id. at 486. This Court echoed Murray in Bonilla v. Hurley,

6

370 F.3d 494, 498 (6th Cir. 2004). In <u>Bonilla</u>, the Court held that a petitioner failed to establish cause for his procedural default despite alleging a sudden departure of his attorney, ignorance with regarding legal and procedural requirements, *pro se* status, and limited access to the prison's law library. <u>Id</u>. at 498.

With the exception of Johnson's borderline IQ, this case is indistinguishable from <u>Bonilla</u>. While this Circuit has never decided whether a borderline mental impairment can establish cause, the Third, Seventh, Eighth, and Ninth Circuits have all squarely addressed the issue of mental impairment. Each of these Circuits has held that a borderline mental impairment is not a factor external to a defense and, therefore, is not cause for excusing procedural default. <u>See</u> <u>Hull v. Freeman</u>, 991 F.2d 86 (3d Cir. 1993) (petitioner's borderline mental retardation did not establish cause because it was not "external" to his defense); <u>Harris v. McAdory</u>, 334 F.3d 665, 669 (7th Cir. 2003) (borderline IQ of 76 did not establish cause because it was not a factor "external" to the defense); <u>Cornman v. Armontrout</u>, 959 F.2d 727, 729 (8th Cir. 1992) (finding petitioner's below-average intelligence insufficient to establish cause); <u>Tacho v. Martinez</u>, 862 F.2d 1376, 1381 (9th Cir. 1988) (petitioner's diagnosis as a "borderline mental defective" was insufficient to establish cause). These holdings are persuasive. Thus, we hold that a borderline

7

mental impairment is not cause for excusing procedural default.

## IV.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's decision.