Anton D. HAMILTON, Jr., Petitioner,

v.

Richard GANSHEIMER, Respondent.

No. 1:06 CV 2317.

United States District Court,
N.D. Ohio,
Western Division.

Feb. 27, 2008.

Anton D. Hamilton, Jr., Conneaut, OH, pro se.

Richard Gansheimer, Conneaut, OH, pro se.

Diane Mallory, Office of the Attorney General--Corrections Litigation State of Ohio, Columbus, OH, for Respondent.

## MEMORANDUM OPINION AND ORDER

JACK ZOUHARY, District Judge.

### BACKGROUND

*Pro se* Petitioner Anton Hamilton, Jr., a prisoner in state custody, filed a Petition for a Writ of Habeas Corpus in this Court (Doc. No. 1). This Court has jurisdiction under 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."). Petitioner is in custody and has alleged his detention violates the First, Sixth, Eighth and Fourteenth Amendments of the U.S. Constitution.

The case was referred to United States Magistrate Judge Vernelis Armstrong for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). In her Report and Recommendation (Doc. No. 41), the Magistrate Judge recommended the Court deny the Petition, as well as Petitioner's Motions of Clarification (Doc. No. 33), for Reconsideration (Doc. No. 37) and to Add to the Petition (Doc. No. 39) ("Other Motions").

This action is before the Court on Petitioner's Objection to the Report and Recommendation (Doc. No. 42) in which he objects specifically, and exclusively, to the recommendation denying the Petition. In accordance with *Hill v. Duriron Co.,* 656 F.2d 1208 (6th Cir.1981) and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has made a *de novo* determination of the Magistrate's findings and adopts the denial of the Petition for a Writ of Habeas Corpus.

The Court also adopts the denial of the Other Motions.

**DISCUSSION**

### Facts and Procedural Background

This Court adopts the Magistrate's statement of the underlying facts (at pp. 2–3).

Petitioner was indicted in July 1999 for murder with a firearm specification. He was found guilty and sentenced to a term of fifteen years to life with an additional term of three years for the firearm specification. In April 2002, following Petitioner's appeal of his conviction, the appellate court reversed the conviction and remanded for a new trial. Petitioner's motions to vacate his sentence and a petition for writ of habeas corpus in the Ohio Supreme Court were denied. In February 2004, Petitioner was convicted of the same counts in his second trial and received the same sentence. Petitioner's motion for a new trial was denied. His conviction was affirmed by the appellate court. The Ohio Supreme Court denied Petitioner's request to appeal in that court. Petitioner filed a petition for writ of habeas corpus in the Ohio Supreme Court, which that court dismissed in July 2006. He filed this Petition on September 25, 2006.

### Petition for a Writ of Habeas Corpus

The Petition alleges three constitutional violations: (1) Petitioner was prejudiced by the trial court's reading of a *Howard* Charge to the jury; (2) he was prejudiced by admission of allegedly perjured testimony; and (3) his conviction for murder with a firearm specification was against the manifest weight of evidence because the evidence consisted of allegedly perjured testimony without other support.

The Magistrate found (at p. 11) that Petitioner procedurally defaulted on each of these arguments by failing to raise them, as required, during state court pro-

ceedings. The Magistrate specifically found Petitioner raised the *Howard* Charge argument in the Ohio appeals court but failed to raise it in the Ohio Supreme Court. The Magistrate further found Petitioner never raised in state court the arguments concerning perjured testimony and verdict against the manifest weight of evidence.

Petitioner objects to each of these findings. He claims: (1) his appellate counsel informed him she would exhaust all issues "by appealing the decision of the Eleventh District Court of Appeals, up to Ohio Supreme Court, so that Petitioner would be able to file a federal Petition for Habeas Corpus, if necessary after that" (Objection at p. 2), and (2) he raised the argument concerning perjured testimony in his state Habeas Corpus proceeding with the Ohio Supreme Court, which he argues satisfies any procedural bar.

#### *Procedural Default*

The doctrine of procedural default prevents federal habeas courts from reviewing federal claims that the state courts declined to address because of a petitioner's failure to comply with state procedural requirements. *See Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). "Under Ohio law, the failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under the State's doctrine of res judicata." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir.1998).

The Sixth Circuit has adopted the following approach in determining whether a petitioner's grounds for relief are procedurally defaulted and thus beyond the federal habeas court's scope of review:

> [W]e engage in a four-part inquiry, asking whether:
>
> (1) a state procedural rule exists that applies to the petitioner's claim, (2) the

petitioner failed to comply with the rule, (3) the state court actually applied the state rule in rejecting the petitioner's claim, and (4) the state procedural rule is an adequate and independent ground upon which the state can rely to deny relief. Furthermore, a procedural default does not bar consideration of a federal claim on habeas corpus review unless the last state court rendering a reasoned opinion in the case clearly and expressly states that its judgment rests on a state procedural bar.

*Morales v. Mitchell,* 507 F.3d 916, 937 (6th Cir.2007) (internal quotation marks omitted) (citations omitted).

■ Procedural default occurs when the last state court rendering a decision makes a "plain statement" basing its judgment on a procedural bar. *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). "The mere existence of a basis for a state procedural bar does not deprive [federal courts] of jurisdiction; the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." *Bowling v. Parker,* 344 F.3d 487, 498 (2003) (quoting *Caldwell v. Mississippi,* 472 U.S. 320, 327, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985)); *see also Coleman v. Thompson,* 501 U.S. 722, 735, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (holding that the last state court rendering a reasoned judgment must "clearly and expressly" state that its judgment rests on a procedural bar for the doctrine of procedural default to apply).

■ In cases where no state court has addressed the issue in a reasoned judgment but has merely denied relief in a summary fashion, the federal habeas court must determine whether the decision rested on "adequate and independent" state grounds. The Sixth Circuit has held that in such cases, the federal courts assume

"that had the state court addressed [the] petitioner's ... claim, it would not have ignored its own procedural rules and would have enforced the procedural bar." *Simpson v. Sparkman,* 94 F.3d 199, 203 (6th Cir.1996).

■ However, the federal habeas court does not need to engage in the four-step analysis described in *Morales* if a petitioner never raised the issue(s) on direct review. *See Teague v. Lane,* 489 U.S. 288, 297–98, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion) ("The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."); *Wong,* 142 F.3d at 322; *Williams v. Bagley,* 380 F.3d 932, 967 (6th Cir.2004). The claim is also procedurally defaulted if a petitioner fails to raise it before the state's highest court after raising it on the first level of appeals. "A claim raised in the state Court of Appeals but not in the state Supreme Court cannot be considered in federal habeas." *Morales v. Coyle,* 98 F.Supp.2d 849, 862 (N.D.Ohio 2000) (citing *Leroy v. Marshall,* 757 F.2d 94, 100 (6th Cir.1985); *O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999)). The failure to raise the issue to the state's highest court results in a procedural bar against collateral challenge of the conviction on that issue in state court. Nor can the federal habeas court later address the issue. *See Leroy,* 757 F.2d at 100.

■ A petitioner may overcome procedural default by showing cause for the failure to comply with the state procedural rule and prejudice resulting from the alleged constitutional violation. *See Wong,* 142 F.3d at 319. In extraordinary cases, a petitioner may overcome the procedural bar by establishing that declining to hear

his or her claim on the merits would lead to a miscarriage of justice:

> A habeas petitioner can overcome a procedural default by demonstrating that "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The "fundamental miscarriage of justice" gateway is open to a petitioner who submits new evidence showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (quoting *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.*

*Williams,* 380 F.3d at 973.

The Court applies these legal standards to the three grounds for relief Petitioner identifies in his Petition and Objection.

## A. Grounds Raised in Petitioner's Second Direct Appeal in State Court

Petitioner raised his argument concerning the *Howard* Charge on his second direct appeal (Doc. No. 19, Ex. 39 at pp. 30–32) but did not raise it in his petition to the Ohio Supreme Court (Doc. 19, Ex. 42). Likewise, Petitioner argued his conviction was against the manifest weight of evidence in his second direct appeal (Doc. 19, Ex. 39 at pp. 21–27) but not in his petition to the Ohio Supreme Court (Doc. 19, Ex. 42). Because Petitioner failed to raise these grounds for relief with the state's highest court on direct review, he procedurally defaulted and cannot raise the claims here. *See Morales,* 98 F.Supp.2d at 862; *Leroy,* 757 F.2d at 100.

In his Objection, Petitioner argues any default should be excused because he was prejudiced by the conduct of his appellate counsel. Petitioner cites a letter dated September 21, 2005 in which his appellate counsel informed Petitioner: "I would like to take your case to the Ohio Supreme Court in order to be sure that we exhaust all state remedies so that you can pursue a federal habeas corpus appeal if you so desire" (Doc. 37-2, at p. 1). In a separate letter counsel stated: "[W]e must attempt to get your case into the Ohio Supreme Court in order to exhaust all of your state remedies so that you can then pursue federal habeas corpus" (Doc. 37-2, at p. 2). Petitioner argues this "misrepresentation" that all his claims would be exhausted was "illegal," "unconstitutional and prejudicial to Petitioner" (Doc. No. 42 at p. 2). His argument fails.

First, ignorance, inadvertence or deliberate strategy of counsel that leads to procedural default of claims is not sufficient cause to excuse default. *See Coleman,* 501 U.S. at 752, 111 S.Ct. 2546 ("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington,* [466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)], we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.").

Second, because Petitioner's direct appeal to the Ohio Supreme Court was a discretionary appeal and not an appeal of right, the constitutional right to effective assistance of counsel did not apply. *Coleman,* 501 U.S. at 752–53, 111 S.Ct. 2546 (petitioner cannot claim ineffective assistance of counsel in discretionary appeals or post-conviction proceedings in which he or she had no constitutional right

to counsel); *Smith v. State of Ohio Dep't of Rehab. and Corr.*, 463 F.3d 426, 432 (6th Cir.2006) ("There can be a constitutional claim of ineffective assistance of counsel only at a stage of the proceedings when there is a right to counsel under the Sixth Amendment"). A petitioner may claim ineffective assistance of counsel when the attorney in the appeal of right does not notify the petitioner of the result of the appeal and the availability of a discretionary appeal in the state's highest court. *Id.* at 433–34. However, in this case, Petitioner's appellate counsel timely notified him of the possible appeal to the Ohio Supreme Court and timely filed the notice of appeal. Any deficiency occurred in counsel's argument before the Ohio Supreme Court, **not** during the lower court appeal. Therefore, Petitioner had no constitutional right to counsel at the time the alleged deficiency occurred and cannot claim ineffective assistance of counsel.

Finally, Petitioner argues this Court must hear the merits of his claims to avoid a fundamental miscarriage of justice. Because this argument relates to all three grounds for relief, it is considered separately below.

### B. Ground Raised in State Habeas Petition

Petitioner did not raise his second ground for relief (admission of allegedly perjured testimony) in his second direct appeal (Doc. 19, Ex. 39) or in his appeal to the Ohio Supreme Court (Doc. 19, Ex. 42). However, he raised the issue in his state habeas petition (Doc. 19, Ex. 45).

As discussed above, a habeas petitioner is procedurally barred from raising grounds for relief that he or she failed to raise on direct review. *Williams*, 380 F.3d at 967 (holding that failure to raise claims on direct review in Ohio courts barred the petitioner from raising the claim in his

federal habeas petitioner because he procedurally defaulted under Ohio law). "Ohio has a rule that claims **must be raised on direct appeal** if possible; otherwise, res judicata bars their litigation in subsequent state proceedings." *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir.2000) (emphasis added); *State v. Perry*, 10 Ohio St.2d 175, 180, 226 N.E.2d 104 (1967). Accordingly, a claim is procedurally defaulted if a petitioner raised it for the first time in his or her Ohio postconviction petition. This bar only applies if "the state courts actually enforced" it. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir.2007).

The issue is whether the Ohio Supreme Court's summary denial of the petition for a writ of habeas corpus (Doc. 19, Ex. 46) "actually enforced" the procedural bar against raising this argument for the first time during postconviction relief. The procedural bar is waived if the state court nevertheless addresses the argument on the merits. *Durr*, 487 F.3d at 432–33. The Ohio Supreme Court did not address the merits in dismissing his petition in summary fashion. Because Petitioner did not raise his second ground for relief before his state habeas petition, no reasoned state court opinion addressed this particular claim. Under *Simpson*, this Court assumes the Ohio Supreme Court would have enforced the procedural bar against Petitioner. And Petitioner has not alleged why this particular default should be excused. Therefore, Petitioner has procedurally defaulted on this ground for relief.

### C. Fundamental Miscarriage of Justice Analysis

Finally, Petitioner argues any procedural default should be excused because he is actually innocent (Objection at p. 3). To meet this standard, Petitioner must establish that this Court's "failure to consider the claims will result in a funda-

mental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546. A petitioner may prove that a miscarriage of justice would occur by demonstrating that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Williams,* 380 F.3d at 973; *Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). The Supreme Court has held:

> It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he [or she] persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

*Schlup,* 513 U.S. at 329, 115 S.Ct. 851.

"The *Schlup* standard is demanding and permits review only in the extraordinary case." *House v. Bell,* 547 U.S. 518, 126 S.Ct. 2064, 2077, 165 L.Ed.2d 1 (2006) (internal quotation marks omitted). The petitioner must present "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup,* 513 U.S. at 324, 115 S.Ct. 851. The federal habeas court then must make "a probabilistic determination about what reasonable, properly instructed jurors would do.... The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *House,* 126 S.Ct. at 2077 (internal quotation marks omitted) (citations omitted).

In this case, Petitioner's Objection fails to specify the basis for his claim of actual innocence. However, because Petitioner is *pro se,* this Court construes his submissions liberally. Petitioner explained his two bases for this claim in his Petition and Supplemental Petition (Doc. Nos. 1 and 7)—the lack of credibility of the state's key witnesses and an affidavit from a juror who felt pressured to render a guilty verdict after the trial judge gave the jury the *Howard* charge. This Court has examined this evidence along with other evidence in the trial record and has found no offer of new evidence that would establish a probability of actual innocence. Furthermore, the evidence—both "new" and existing—fails to establish that it is likely that no reasonable juror would convict Petitioner.

First, Petitioner offers affidavits and a report from a private investigator in an attempt to show that the testimony of Jonathan King and Jameson Jeffries was perjured and therefore an improper basis for his conviction. The affidavit of Thomas Peterson (Doc. No. 7, Ex. 2) is not relevant because, although it purports to undermine Jeffries' testimony, it addresses an issue that was not included in his trial testimony—Petitioner's allegedly threatening conduct at a card game (*See* Doc. No. 29, Trial Tr. Vol. VII at pp. 1188–1255). Peterson's affidavit states that Petitioner did not threaten him or brandish a weapon at him during a card game, which Jeffries stated in his statement to police. However, Jeffries did not testify about any such threats at trial.

Next, Petitioner points to an investigative report by a private investigation service that recounts an interview in which Antonio Rimmer denies Jonathan King went to Rimmer's home on the night of the murder for which Petitioner was convicted (Doc. No. 7, Ex. 4). This statement con-

tradicts the statement King made to police (Doc. No. 7, Ex. 2). However, Rimmer testified at trial that King did not visit his home or drive around with Rimmer that evening (Doc. No. 30, Trial Tr. Vol. VIII, at pp. 1549–51). This evidence is not "new" and indeed was already before the court in Petitioner's trial. The jury was free to determine which witness was more credible. Neither of these submissions offers new evidence that was not before the jury that would make it more likely than not that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."

■■■ Second, Petitioner offers an affidavit dated February 13, 2004 from a juror, Martin Chick, at his second trial (Doc. No. 7 at p. 1). Chick testifies he maintained Petitioner's innocence throughout jury deliberations and still believes in his innocence. He also states "[t]hat due to the instruction, I felt that I had no choice but to agree to a verdict of Guilty." This statement provides no evidence that would affect the likelihood of a jury's determination of Petitioner's guilt. The affidavit relates to Petitioner's claim that the jury's verdict was influenced by an improper instruction. Petitioner has procedurally defaulted on this claim, as discussed above, and in any event, the juror's testimony provides this Court no evidence that might form the basis of a fundamental miscarriage of justice.

Petitioner fails to produce "new reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Gulertekin v. Tinnelman–Cooper*, 340 F.3d 415, 428 (6th Cir.2003) (*quoting Schlup*, 513 U.S. at 324,

115 S.Ct. 851) (internal quotation marks omitted). Petitioner's submissions concerning King's and Jeffries' testimony is either irrelevant or merely questions the jury's credibility determinations, and the submission from the juror is not "reliable evidence" that actually relates to the facts of the case. Petitioner has not met the actual innocence standard because this is not "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Therefore, the Court cannot reach the merits of Petitioner's procedurally defaulted claims.

### CONCLUSION

After conducting a *de novo* review of the portions of the Report and Recommendation objected to by Petitioner, the Magistrate's Report and Recommendation is hereby adopted. The Petition (Doc. No. 1) is dismissed.

For the reasons set forth above, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis on which to issue a certificate of appealability. 28 U.S.C. § 2253; Federal Appellate Rule 22(b).

IT IS SO ORDERED.

### MAGISTRATE'S REPORT AND RECOMMENDATION

VERNELIS K. ARMSTRONG, United States Magistrate Judge.

This case, filed pursuant to 28 U.S.C. § 2254 [1], was automatically referred to the undersigned Magistrate pursuant to Local

---

**1.** The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the

ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C.A. § 2254 (Thomson/West 2007).

Rule 72.2(b)(2)[2]. Pending are the following: Petitioner's Writ (Docket No. 1) and Respondent's Answer/Return to Writ (Docket No. 14), Petitioner's Motion for Clarification (Docket No. 33), Petitioner's Motion for Reconsideration (Docket No. 37), Petitioner's Motion to Supplement Petition (Docket No. 39) and Respondent's Opposition (Docket No. 40). For the reasons that follow, the Magistrate recommends denial of the Writ, the Motion for Clarification, the Motion for Reconsideration and the Motion to Supplement the Petition.

### FACTUAL BACKGROUND

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), in a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to a judgment in state court, the factual findings made by a state court in the direct appeal are presumed to be correct. *Keith v. Mitchell*, 455 F.3d 662, 666 (6th Cir.2006) (*citing* 28 U.S.C. § 2254(e)(1) (2006)).

The Court of Appeals for the Eleventh District, Lake County, Ohio made the following findings of fact:

On May 11, 1999, family and friends became concerned about the whereabouts of the victim, Melvin Hamilton, after he did not show up at various events that day, including work. Later that evening, his body was found by his family and friends in the bedroom of his Painesville residence. Melvin Hamilton had been shot three times with his own .38 caliber revolver. The gun was placed under his right hand, apparently in an attempt to make the crime look like a suicide. The victim was Petitioner's grandfather.

Medical evidence established that the victim died in the late evening hours of May 10, 1999, or in the early morning hours of May 11, 1999. As police investigated the crime scene, the family and friends of the victim began to gather in the downstairs portion of the victim's house. Petitioner's father and the victim's son, went over to Linda Brandon's (Petitioner's mother) house to find Petitioner. Petitioner's father questioned him about what had happened to the victim, as the two of them walked back to the victim's house.

Family and friends began to suspect that Petitioner murdered the victim. Petitioner stayed with the victim the previous weekend. The victim told Petitioner that he had to vacate the house by May 10, 1999. The night the body was discovered, Petitioner sat on the couch in a "nonchalant" manner with his arms crossed.

Sgt. Lutha, of the Painesville Police Department, responded to the scene. After being at the scene a short time, he was told by his chief to question Petitioner, because Petitioner was believed to be one of the last people to see the victim alive. Sgt. Lutha took Petitioner to the police station to question him as a witness. After taking one statement, Sgt. Lutha received a phone call from the scene, where other witnesses were being questioned, and found that there were inconsistencies between Petitioner's version of the events of May 10, 1999, and those given by witnesses at the scene. He then read Petitioner his

**2.** The Clerk shall refer all *pro se* petitions for habeas corpus filed under 28 U.S.C. § 2254, provided such petition has first been reviewed by the Court pursuant to 28 U.S.C. § 1915(d) and Rule 4 of the Rules Governing § 2254 Cases and a decision has been made to require a response to the petition, to a Magistrate Judge for a Report and Recommendation as provided in Local Rule 72. 1, *Duties of United States Magistrate Judges*.

*Miranda* rights. See *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Petitioner then gave a second statement that was consistent with his first. In both statements Petitioner denied having anything to do with the victim's death. Petitioner's fingerprints were taken, and a gunshot residue test was performed on his hands.

On May 18, 1999, Petitioner's fingerprints were found to match a latent fingerprint on the murder weapon. An arrest warrant was issued for Petitioner for murder. Sgt. Lutha called Petitioner's father and had him bring Petitioner to the police station. Petitioner was given his previous statement to look over and, after reviewing it, did not want to add or change anything. He was then *Mirandized* again. Sgt. Lutha informed him that his fingerprints were found on the gun, to which Petitioner responded after a period of silence, "you might as well take me over." Petitioner was arrested and taken to jail.

*State v. Hamilton,* 2002 WL 549841, *1 (2002)

### PROCEDURAL BACKGROUND

Petitioner was indicted on July 9, 1999 on one count of murder with a firearm specification[3] (Docket No. 19, Exhibit 1). Petitioner's motion to suppress was denied on September 7, 1999 (Docket No. 19, Exhibit 5). Petitioner was found guilty by a

jury of murder with a firearm specification. On December 8, 1999, Judge James W. Jackson sentenced Petitioner to serve an indefinite term of imprisonment of fifteen years to life to be preceded by and to run consecutively to an additional term of three years in prison for the firearm specification (Docket No. 19, Exhibit 6). Petitioner appealed to the Eleventh Appellate District in Lake County, Ohio[4] (Docket No. 19, Exhibit 7). On April 15, 2002, the Eleventh Appellate District Court reversed and remanded the case for a new trial (Docket No. 1, Exhibit 9).

In the interim, Petitioner filed a petition to vacate or set aside his sentence in the Lake County Court of Common Pleas (Docket No. 19, Exhibit 11). On March 26, 2001, the motion to vacate was denied (Docket No. 19, Exhibit 13).

On remand, Petitioner filed a motion to suppress (Docket No. 19, Exhibit 18). The motion to suppress was denied as moot (Docket No. 19, Exhibit 19). Petitioner's request for release was denied on August 4, 2003 (Docket No. 19, Exhibit 27). Petitioner's writ of mandamus was denied on October 27, 2003 (Docket No. 19, Exhibit 20). The Supreme Court of Ohio denied Petitioner's petition for writ of habeas corpus (Docket No. 19, Exhibit 33).

At his second trial, Petitioner was found guilty of murder on February 4, 2004, and sentenced to serve an indefinite term of fifteen years to life in prison and an addi-

---

**3.** Murder is contrary to and in violation of OHIO REV.CODE § 2903.02. The firearm specification is found at OHIO REV.CODE § 2941.145.

**4.** Petitioner alleged eight assignments of error as follows: (1) the trial court erred in denying the motion to suppress; (2) the trial court erred in admitting the fingerprint evidence; (3) the trial court abused its discretion by admitting character evidence; (4) the trial court abused its discretion in permitting the withdrawal of Petitioner's written statement

after they had already been admitted; (5) the trial court abused its discretion in excluding the police statement given by Sandra Lawrence; (6) the trial court abused its discretion in admitting photographs over the objection of trial counsel; (7) the trial court committed plain error by interrogating a witness in a manner suggestive of bias, prejudice or prodding of the witness to elicit partisan testimony; and (8) Petitioner's conviction was against the manifest weight of the evidence.

tional term of three years as a mandatory prison term for a firearm specification (Docket No. 19, Exhibit 34). Petitioner's motion for a new trial was denied on April 7, 2004[5] (Docket No. 19, Exhibit 38). The judgment of the trial court was affirmed on December 27, 2004, by the Eleventh Appellate District Court of Appeals[6] (Docket No. 19, Exhibit 41). The Supreme Court of Ohio denied Petitioner's request for leave to appeal and dismissed the appeal as not involving any substantial constitutional question[7] (Docket No. 19, Exhibit 44). Petitioner filed a writ in the Supreme Court of Ohio (Docket No. 19, Exhibit 45). On July 5, 2006, the Ohio Supreme Court dismissed the writ (Docket No. 19, Exhibit 46).

## *JURISDICTION*

■ A federal court has jurisdiction to consider a petition for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the grounds that he or she is in custody in violation of the constitution or laws or treaties of the United States. *Leslie v. Randle*, 296 F.3d 518, 521 (6th Cir. 2002) (*citing* 28 U.S.C. § 2254 (Thomson/West 2002)). The "in custody" requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty. *Id. (citing Hensley v. Municipal Court*, 411 U.S. 345, 93 S.Ct. 1571, 1574–1575, 36 L.Ed.2d 294 (1973)).

Petitioner satisfies both prongs of the requirements for habeas jurisdiction. He was convicted in the Lake County Court of Common Pleas. He is incarcerated at the Lake Erie Correctional Institution in Conneaut, Ohio (Docket No. 1, p. 1). Petitioner is "in custody" for purposes of habeas jurisdiction. He makes claims that implicate the First, Sixth, Eighth and Fourteenth Amendments of the United States Constitution. Such allegations, if true, are phrased sufficiently to allege a denial of constitutional guarantees. Therefore this Court has jurisdiction.

## *EVIDENTIARY HEARING*

Generally, a habeas petitioner is entitled to an evidentiary hearing in federal court if the petition "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing." *Stanford v.*

5. Petitioner alleged that the jury was unable to reach a unanimous verdict. Rather than allow the jury to render a verdict based on their actual findings, the court read the Howard Instruction, an instruction formulated by the court in *State v. Howard*, 42 Ohio St.3d 18, 537 N.E.2d 188 (1989), *reh'g denied*, 43 Ohio St.3d 703, 539 N.E.2d 166 (1989), that must be given to a jury when a determination has been made that the jury is deadlocked in its decision. Petitioner reasoned that this instruction pressured the one juror that may have voted to acquit him to acquiesce in the remaining eleven jurors' finding of guilt (See Docket No. 35).

6. Petitioner presented the following assignments of error: (1) the trial court erred to his prejudice by failing to remove a prospective juror for cause; (2) the trial court erred in failing to grant his request for change of venue; (3) the trial court erred in failing to grant his motion for a mistrial; (4) the trial court erred to his prejudice when it affirmed the verdict of guilty against the manifest weight of the evidence; (5) the trial court erred in denying the motion for acquittal; and (6) the trial court erred in overruling the motion for a new trial.

7. Petitioner presented three propositions of law. First, Petitioner's right to due process was violated when the motion to change venue was denied. Second, Petitioner was prejudiced by multiple references to his first trial, in violation of the Sixth and Fourteenth Amendments. Third, Petitioner's right to due process was violated when the trial court denied his motion for mistrial (Docket No. 19, Exhibit 42).

*Parker,* 266 F.3d 442, 459–460 (6th Cir. 2001) *(citing Wilson v. Kemna,* 12 F.3d 145, 146 (8th Cir.1994) (citation and internal quotation omitted)). However, a petition may be summarily dismissed if the record clearly indicates that the petitioner's claims are barred either from review or without merit. *Id.*

 In his Motion for Reconsideration, Petitioner requests an evidentiary hearing. He suggests that the Court conduct a hearing to clarify the pending issues and to address new issues not previously raised in his pleadings on appeal. Upon review of the pleadings and transcripts, the procedural issues presented in this case can be resolved from the pleadings in the record. No additional factual inquiry is required to clarify the pending issues. The Court can determine if Petitioner was afforded a fair and full hearing from review of the transcripts. No additional factual inquiry is required to address issues not previously raised and/or addressed by the appellate and Supreme Courts as they are barred from habeas review. The Magistrate finds that an evidentiary hearing is not required to resolve the issues presented in this case for review.

### HABEAS CORPUS STANDARD OF REVIEW

In determining whether to issue a habeas writ, the standards set forth in the AEDPA govern the district court's review of a state court decision. *French v. Jones,* 332 F.3d 430, 435–436 (6th Cir.2003), *cert. denied,* 540 U.S. 1018, 124 S.Ct. 581, 157 L.Ed.2d 432 (2003). The AEDPA only provides habeas relief for a state prisoner in certain circumstances. *Id.* An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court

proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Id. (citing* 28 U.S.C. § 2254(d) (2001)).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Id.* Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

### PROCEDURAL BARRIERS TO REVIEW

Before a reviewing court will review the merits of a federal petition for a writ of habeas corpus, a petitioner must overcome several procedural barriers. *Williams v. Bobby,* 2007 WL 2156402, *5–7 (N.D.Ohio 2007). Specifically, the petitioner must surmount the barriers of time limitation, exhaustion and procedural default.

*Statute of Limitations*

The AEDPA provides for a one year statute of limitations on the filing of habeas corpus actions. Pursuant to 28 U.S.C. § 2244(d)(1), a one year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court.

The limitation period shall run from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by state action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(A), (B) (Thomson/West 2007).

The time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d)(1) and (2) (Thomson/West 2007).

*Exhaustion*

█ Prior to seeking review of a conviction under federal habeas corpus statutes, a state prisoner must exhaust all available state remedies or have no remaining state remedies available. *Tarver v. Bobby,* 2007 WL 927951, *7–8 (N.D.Ohio 2007) (*citing* 28 U.S.C. § 2254(b) and (c); *Castille v. Peoples,* 489 U.S. 346, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380 (1989); *Riggins v. McMackin,* 935 F.2d 790, 793 (6th Cir.1991)). The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all of the prisoner's claims. *Id. (citing Duncan v. Henry,* 513 U.S. 364, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995); *Manning v. Alexander,* 912 F.2d 878, 881 (6th Cir.1990)). Prisoners do not fairly present a claim to the highest court when the court is procedurally barred from reviewing the claim on its merits. *Id. (citing Castille,* 109 S.Ct. at 1060). As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. *Barclay v. Bradshaw,* 2007 WL 108721, *5 (N.D.Ohio 2007) (citing 28 U.S.C. § 2254(b) and (c); see also Baldwin v. Reese,* 541 U.S. 27, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004)).

█ To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Id. (citing Wong v. Money,* 142 F.3d 313, 322 (6th Cir.1998); *see also McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir.2000) *cert. denied,* 532 U.S. 958, 121 S.Ct. 1487, 149 L.Ed.2d 374 (2001)). A petitioner fairly presents the substance of his federal constitutional claim to the state courts by (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Id.* (citations omitted).

█ Unless an exceptions applies, the Court must dismiss a petition for lack of exhaustion if it contains at least one issue which was not presented to the state courts so long as a remedy is still available for the petitioner to pursue in the state

courts. *Id. (citing Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 1202, 71 L.Ed.2d 379 (1982)). A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Id. (citing Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 2563, 115 L.Ed.2d 640 (1991)).

### Procedural Default

The procedural default doctrine bars review of federal claims that the state court has declined to address when a petitioner does not comply with a state procedural requirement. *Williams, supra,* 2007 WL 2156402 at *5–6 *(citing Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977)). In these cases, the state judgment rests on adequate and independent state procedural grounds. *Id. (citing Coleman,* 111 S.Ct. at 2554). When the last explained state court rests upon procedural default as an alternative ground, a federal district court is not required to reach the merits of the habeas petition. *Id. (citing McBee v. Abramajtys,* 929 F.2d 264, 265 (6th Cir.1991)).

In determining whether a state court has addressed the merits of a petitioner's claim, federal courts will presume that there are no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Id. (citing Coleman,* 111 S.Ct. at 2557). Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Id. (citing Maupin v. Smith,* 785 F.2d 135 (6th Cir.1986)). Under the *Maupin* test, a reviewing court must decide: (1) whether

the petitioner failed to comply with an applicable state procedural rule; (2) whether the state courts actually enforced the state procedural sanction; (3) whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and (4) if the above is met, whether the petitioner has demonstrated "cause" and "prejudice." *Id. (citing Maupin,* 785 F.2d at 138). As set forth in the last factor of the *Maupin* test, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Id. (citing Coleman,* 111 S.Ct. at 2565, 111 S.Ct. 2546). "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Id. (citing Magby v. Wawrzaszek,* 741 F.2d 240, 244 (9th Cir.1984), *cert. denied,* 490 U.S. 1068, 109 S.Ct. 2070, 104 L.Ed.2d 635 (1989)). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Id. (citing Smith v. Murray,* 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986)).

### ANALYSIS

In the Writ, Petitioner presents three arguments. First, he was prejudiced by the trial court's reading of the Howard Charge to the jury. Second, the trial court erred in admitting perjured testimony. Third, the conviction for murder with a firearm specification is against the manifest weight of the evidence.

Respondent argues that the procedural barriers bar review of Petitioner's arguments. All of the claims presented in the Petition constitute unexhausted grounds

for relief; consequently, the Petition should be dismissed. In the alternative, Respondent contends that Petitioner's claims are not cognizable in federal habeas corpus.

*Petition for Writ of Habeas Corpus*

Petitioner has overcome the barriers of time limitations. He timely filed his Writ within the one year after the Supreme Court denied his request for leave to appeal. However, he procedurally defaulted his first ground for relief in the Writ. He did present this claim of undue influence by the court when it gave the Howard Charge to the jury. He abandoned the claim and did not seek relief in the Ohio Supreme Court. Clearly a default occurred when Petitioner failed to present fairly his first constitutional claim to the highest state court. Further, he has not demonstrated in any of his pleadings that the failure to exhaust should be excused or that failure to consider this claim will result in a fundamental miscarriage of justice. Petitioner's second and third claims are procedurally defaulted as they were never presented to the state courts. Petitioner does not argue or show that he has cause for the default or that the failure to consider his claim will result in the conviction of an actually innocent defendant.

The Magistrate finds that the Petition must be dismissed for lack of exhaustion as none of the issues presented for habeas review were presented to the state courts during which time a remedy was still available for pursuit in the state courts.

*Motion to Clarify*

 Petitioner alleges that Respondent retaliated against him for exercising his First Amendment rights. Once he filed this Writ, Respondent modified the conditions of confinement by confiscating his personal property, making a bunk assignment that was contraindicated by his physician, censoring his mail forwarded by Petitioner to United States agencies and refusing him medical treatment to repair a hernia.

 Federal courts have long recognized the potential for prisoners to evade the habeas exhaustion requirements by challenging the duration of their confinement under 42 U.S.C. § 1983, rather than by filing habeas petitions. *Thomas v. Eby*, 481 F.3d 434, 438 (6th Cir.2007). The Supreme Court recognized a "habeas exception" to Section 1983 when it held that suits challenging the fact or duration of confinement fall within the traditional scope of habeas corpus and accordingly are not cognizable under Section 1983. *Id.* *(citing Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)). Unless a prisoner's conviction or sentence was previously set aside by a separate legal or administrative action, Section 1983 would not countenance claims for damages if a finding for the plaintiff would *necessarily invalidate* a conviction or sentence. *Id.* *(citing Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)). A prisoner cannot use Section 1983 to challenge prison procedures employed to deprive him or her of good-time credits when the alleged procedural defect alleged would, if established, "necessarily imply the invalidity of the punishment imposed." *Id.* *(citing Edwards v. Balisok*, 520 U.S. 641at 648, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997)).

It is difficult to ascertain if Petitioner is challenging the conditions of confinement under the Eighth Amendment of the United States Constitution or the imposition of the aforementioned conditions after he filed a grievance under the First Amendment of the United States Constitution. In either case, Petitioner does not seek to invalidate his conviction or challenge the terms of his sentence. His claims fall

outside the scope of habeas corpus relief or the habeas exceptions established by the Supreme Court. Accordingly, Petitioner's claims are not cognizable in this habeas action. The Motion for Clarification must be denied.

*Motion for Reconsideration*

Petitioner requests that the Court reconsider the Motion for Evidentiary Hearing. The Magistrate finds that this Motion is not well taken.

 Courts should not reconsider prior decisions where the motion for reconsideration either renews arguments already considered or proffers new arguments that could, with due diligence, have been discovered and offered during the initial consideration of the issue. *Playa Marel, P.M., S.A. v. LKS Acquisitions, Incorporated,* 2007 WL 3342439, *2 (S.D.Ohio 2007) *(citing McConocha v. Blue Cross and Blue Shield Mutual of Ohio,* 930 F.Supp. 1182, 1184 (N.D.Ohio 1996)). However, there are three situations which justify reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or to prevent manifest injustice. *Id. (citing Plaskon Electronic Materials, Incorporated, v. Allied–Signal, Inc.,* 904 F.Supp. 644, 669 (N.D.Ohio 1995))(*citing Bermingham v. Sony Corporation of America, Incorporated,* 820 F.Supp. 834, 856 (D.N.J.1992), *aff'd* 37 F.3d 1485 (3rd Cir.1993)).

 In support of his argument, Petitioner proffers what he considers new legal theories and new evidence not presented to the state court. However, the theories are not based on a change in the controlling law and they do not constitute new evidence. The theories to which Petitioner refers are merely a reiteration and recharacterization of evidence presented in his trial on remand. Clearly the theories have already been considered by the trial court and/or jury.

Of the cases to which Petitioner refers, one has been overruled, one addresses the district court jurisdiction to hear challenges by aliens at Guantanamo Bay and the other addresses the parameters of a California state appellate court's application of federal law to jury instructions on self defense[8]. These cases do not constitute an intervening change in controlling law that would be relevant to Petitioner's request for habeas relief. Nor do these cases provide reference to the whereabouts of new evidence.

 Petitioner does make one unsubstantiated argument that he was prejudiced by appellate counsel and that a manifest injustice will occur if he is not granted a hearing in which he can elaborate on her deficiencies. In effect he seeks to supplement his request for hearing by alleging a new ground for relief. Even if appellate counsel's performance fell below the acceptable standards, a hearing on this issue would be futile. Petitioner failed to present this issue to the state courts. Accordingly, such a claim is procedurally defaulted and not subject to hearing.

*Motion to Supplement the Petition*

 Petitioner seeks an order, as the Magistrate construes his request, for the placement and/or comparison of fingerprint evidence obtained from the scene of Melvin Howard's murder to the interna-

---

**8.** In his Motion for Reconsideration, Petitioner refers to *Rasul v. Bush,* 542 U.S. 466, 124 S.Ct. 2686, 159 L.Ed.2d 548 (2004); *Carpenter v. Mohr,* 163 F.3d 938 (6th Cir.1998) *rev'd* 529 U.S. 446, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000), and *Middleton v. McNeil,* 541 U.S. 433, 124 S.Ct. 1830, 1833, 158 L.Ed.2d 701 (2004).

tional fingerprint database at the federal government's expense.

Again, even if the Magistrate grants Petitioner leave to supplement his pleading, such issue would also be procedurally defaulted. In his motion for a new trial, Petitioner raised the issue of whether the trial court erred in admitting a flawed fingerprint analysis. He failed to present that issue to the highest court in the state. After the conclusion of his new trial, he failed to proffer this issue on appeal to the appellate and supreme courts. Since this issue is procedurally defaulted, an amendment to the Writ to include this cause of action would also be futile.

### CONCLUSION

For these reasons, the Magistrate recommends denial of the Writ of Habeas Corpus, the Motion to Clarify, the Motion for Reconsideration and the Motion to Supplement. It is further recommended that the referral to the Magistrate be terminated.